DORA TRAVINSKY, ADMINISTRATRIX, APPELLANT, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY ET AL., APPELLEES.

288 N. W. 512

FILED NOVEMBER 17, 1939. No. 30667.

*Anson H. Bigelow* and *Phillip F. Abboud,* for appellant.

*Kennedy, Holland, De Lacy & Svoboda, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, MESSMORE and JOHNSEN, JJ., and KROGER and ELLIS, District Judges.

ELLIS, District Judge.

This is an action for damages for alleged wrongful death.

Upon trial, at the close of plaintiff's evidence, the trial court sustained defendants' motion for a directed verdict and dismissed plaintiff's action. Motion for new trial was overruled and plaintiff brought this appeal.

The motion for directed verdict was predicated on the ground that plaintiff's evidence disclosed contributory negligence on the part of plaintiff's deceased more than slight, precluding plaintiff's recovery, and the disposition of the

case by the trial court was upon that ground. This ruling of the trial court is assigned as error, and while there are other assignments, only the one requires consideration.

The evidence, in so far as it is necessary to set it forth in this opinion, may be summarized as follows: The accident producing death occurred at the intersection of Fifteenth and Chicago streets, in the city of Omaha. Chicago street runs east and west and Fifteenth street runs north and south. There are double street car tracks on Fifteenth street. The accident occurred in October, 1936, around 6 o'clock p. m., it being sufficiently dark at the time so that the street light at the intersection was lighted and vehicles had their lights on. One of defendant tram company's cars was proceeding north on Fifteenth street on the northbound track which is the right-hand or east track of the two tracks on that street. In the opinion of a pedestrian, who observed the car as it passed the first alley south of Chicago street, the car was then traveling at a speed of 35 miles an hour. He did not observe the car from that point on until after he heard the impact. A taxicab driver, who followed the car for some distance and estimated that it was about 200 feet ahead of him when it entered the intersection in question, testified that the car was going faster than his car and fixed his car speed at from 30 to 32 miles an hour. There was evidence of the distance required in which to bring the car to a stop after the impact which, it may be conceded, has some tendency to corroborate these estimates of speed. The only eyewitness of this fatal accident and the movements of the deceased prior to the impact was the motorman of the car involved, the defendant Monaghan. He testified that he brought the car into the intersection at a speed of from 10 to 15 miles an hour and that at that time it was drifting, that is to say, there was no power on. As he reached a point approximately the center of the intersection he saw the deceased step off the curb at the northwest corner of the intersection. The evidence indicates that immediately prior to stepping into the street he was proceeding on the sidewalk. Other

evidence, including a plat of the intersection, indicates that the point where deceased stepped into the street was approximately 38 feet north and 30 feet west of the center of the intersection. The motorman further testified that immediately on stepping off the curb the deceased started to run and ran at an angle south and east from the point where he stepped into the street until he reached a point approximately in the center of the south-bound car track, and that at some point in this movement he raised his hand as though to signal the car to stop for him. Incidentally the regular stopping place for street cars at this intersection was on the southeast corner of the intersection. The distance between the rails of each set of tracks is 5 feet and the distance between the inside rails of the two sets of tracks is also 5 feet. When the deceased reached the point above indicated, he stopped and lowered his hand. The motorman testified that when the deceased stopped he was between 3 and 6 feet northwest from the front of the car, the measurement being a diagonal one and including, of course, the distance which he was west of the car as well as the distance he was north of the car. The motorman fixed the latter distance at a "couple of feet." Incidentally the evidence shows that the car projects about 1½ feet beyond the outside rail. When the deceased stopped and lowered his hand, the motorman put on some power and at that instant the deceased "made a sudden dash"—"darted across" in front of the car and was struck by it. The motorman did not see the actual impact of the car against the deceased, but felt it, and stated that it occurred "almost instantly" after the deceased started to move from the point where he had stopped and lowered his hand. The deceased was thrown to the northwest and he was found lying in the space between the two car tracks. No witness attempted to fix the exact point of impact, but blood marks on the pavement indicated that it was at least 10 feet, 10 inches, south of the south line of the sidewalk on the north side of Chicago street off of which the deceased stepped into the street.

As previously indicated, all of the foregoing evidence was presented by the plaintiff. The plaintiff is entitled to have this evidence considered in the light most favorable to her, and to the benefit of all favorable inferences arising from it.

The plaintiff contends that the deceased was a pedestrian crossing the street within the crosswalk space, therefore entitled to the right of way, and that the defendants were negligent in not according that right of way to him. In the most favorable light, the description of deceased's movement, as well as the evidence of physical facts, not only do not support this contention, but refute it, and the contention must be disposed of on that basis.

The evidence shows that deceased had availed himself of street car service on this street on previous occasions, and it is no more than a fair assumption to say that he knew the regular stop for taking on passengers was on the diagonally opposite corner of the intersection from that where he stepped into the street. If he intended to intercept the car, as would be indicated by his raised hand, he certainly should not have expected to do so at a point out in the intersection. His actual movement to the southeast indicates an intention to reach the regular stop, which intention was not realized, either because he had misjudged the distance of the car from him, the speed of its approach or some other reason. Be that as it may have been, the evidence discloses that he reached a point out in the intersection, stopped and lowered his hand. At this point he was safe from the car, and if he had remained stationary, the car would have passed him without injury. From the position of the motorman, the deceased's conduct and action clearly indicated he was conscious and aware of the movement of the car. When he stopped in such close proximity to the car, but nevertheless in a place of complete safety, there was nothing to indicate any danger in the car proceeding. The speed of the car up to that point was wholly immaterial, as the plaintiff was safe from it, and, regardless of its speed, it constituted no menace to him. The evi-

dence is that from this place of safety he suddenly moved into the path of the car and almost instantly was struck by it. There is nothing in the record to contradict this evidence.

We think that, as a matter of law, the last movement of the deceased constituted more than slight negligence contributing to cause the accident, and that the case is controlled by the decisions of this court in *Troup v. Porter*, 126 Neb. 93, 252 N. W. 611, and *McDonald v. Omaha & C. B. Street R. Co.*, 128 Neb. 17, 257 N. W. 489. In each of these cases the pedestrian suddenly stepped from a place of safety in close proximity to a moving vehicle directly into its path, and this court held that, as a matter of law, such act was negligence which was more than slight, justifying the trial courts in refusing to submit the cases to the jury. In passing, it is interesting to note that in the *Troup* case the only evidence of Judge Troup's movements came from the defendant driver of the car.

The plaintiff vigorously denies the application of the two cases cited, and contends that the case of *Doan v. Hoppe*, 133 Neb. 767, 277 N. W. 64, announces a rule for determining whether the question of contributory negligence is one of law for the court or one of fact for the jury, and that the rule therein announced required submission to the jury in the principal case. More than that, the plaintiff in effect argues that the rule in the *Doan* case has nullified and superseded the rule developed in the *Troup* and *McDonald* cases. We are unable to agree with either of these contentions. The plaintiff relies on this court's statement in the *Doan* case of the rule stated in *White v. Davis*, 103 Cal. App. 531, 284 Pac. 1086. Plaintiff contends that, under the rule of the California case, if the pedestrian looks, this one circumstance makes the question one for the jury. This would be a rule of thumb easy of application, but we are unable to agree that the problem is quite so simple or that the use of such a rule would be productive of desired ends. We must rather be reconciled to the probable impossibility of finding or making one rule which will be a safe guide in

all cases. It is no reproach of the California rule to say that it is not determinative in the principal case. It is noted that each division of that rule is wisely qualified by the statement that it is "usually" determinative.

The negligence does not arise from the single circumstance of whether the pedestrian looks or does not look. The determining element in this type of case is the sudden movement into the path of the vehicle followed by almost instantaneous collision.

In the instant case we think the fact that plaintiff's deceased looked and saw the car and was conscious of its motion and proximity made his act of suddenly stepping into its path negligence of a higher degree than if he had done so without looking, as Judge Troup apparently did.

The same reasoning applies to plaintiff's contention that the rule of the *Troup* and *McDonald* cases should not be applied here because of evidence of the excessive speed of the car. Conceding excessive speed to have been proved, it would seem that since the deceased observed the approach of the car he must have had some relative impression of its speed and that the higher that impression the greater his negligence in suddenly moving from a place of safety into its path.

The action of the trial court was right and the judgment is

AFFIRMED.