BEN HEINIS, AS ADMINISTRATOR OF THE ESTATE OF BEN ALLEN HEINIS, JR., DECEASED, APPELLEE, v. H. S. LAWRENCE, FIRST AND REAL NAME HAROLD S. LAWRENCE, APPELLANT.

71 N. W. 2d 127

Filed June 24, 1955. No. 33763.

*Edward E. Carr* and *Hollman & McCarthy*, for appellant.

*Maupin & Dent*, for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ., and FLORY, District Judge.

FLORY, District Judge.

This is an action for damages brought by Ben Heinis as administrator of the estate of Ben Allen Heinis, Jr., deceased, plaintiff and appellee herein, against H. S. Lawrence, defendant and appellant. The action is for damages for the death of the deceased alleged to have been caused on or about the 2nd day of July 1953, by the negligence of the defendant in the operation of his

automobile. At the close of the plaintiff's testimony defendant moved for a directed verdict and renewed the motion at the close of all of the testimony. Ruling on these motions was reserved by the trial court. The case was submitted to the jury and a verdict rendered for the plaintiff. Thereafter the trial court overruled the motions for directed verdict and motion for judgment for the defendant notwithstanding the verdict, and judgment was rendered on the verdict. Motion for new trial was filed and overruled and appeal taken therefrom by the defendant.

The appellant assigns as error that the trial court erred in not finding, as a matter of law, that decedent was guilty of contributory negligence which was the proximate cause of the accident and sufficient to bar recovery by the plaintiff; and that the court erred in overruling the defendant's motion for directed verdict at the close of the plaintiff's case and again at the conclusion of all of the evidence.

We have concluded that as a matter of law plaintiff's evidence conclusively shows that the deceased was guilty of negligence more than slight as compared with the negligence of the defendant, barring recovery herein.

The accident occurred on U. S. Highway No. 6 at a point about 10½ miles east of Imperial in Chase County, Nebraska, at about 10:55 a. m., or shortly before, and there is no evidence of bad weather or that any other vehicles or obstructions were involved in the accident. Deceased, at the time of his death, was 17 years of age and residing with his parents. At the time of the accident he was riding on top of a load of wheat on a grain truck which was proceeding in an easterly direction. The defendant was driving his automobile in the same direction approaching the truck from the rear. Deceased, who is referred to frequently in the evidence as Bennie, and another boy, Kent Searl, were riding on the left side of the truck with their legs hanging over the side. Two other boys were riding on top of

the wheat, and three men were in the cab of the truck. The truck was going east slowly, at a speed of 7 or 8 miles an hour, down a hill preparing to stop at the foot of the hill to let the deceased off.

The county surveyor testified that the highway was an oil mat 23 to 24 feet wide; that he prepared a plat, exhibit No. 1; that the west end of this plat does not extend clear back to the top of the hill to the west; and that it is approximately 1,000 feet from where he started measuring to the low point between the hill to the west and the hill gradually rising from there to the east. The record is not clear as to how far it was beyond the 1,000 feet to the crest of the hill to the west.

The testimony of the plaintiff's witnesses placed the point of the accident at approximately the low spot shown on plaintiff's exhibit No. 1, or more than 1,000 feet east of the crest of the hill over which defendant's car was approaching from the west.

As the wheat truck was slowing down at this point the deceased jumped from the side of the truck into the north lane of the highway and was almost immediately struck by the car of the defendant who had turned into the north lane to pass the slowly moving truck.

Plaintiff's witness Charles Richard Heinis, 12-year-old brother of the deceased who was sitting on top of the wheat, testified that he first saw the car when Bennie jumped off the truck, and that the car was right behind the truck. He yelled "Bennie," and the car hit Bennie right after he yelled. He further testified that the car was starting to go around the truck when he first saw it, and that Bennie ran a step and then the car hit him.

Kent Searl, a 13-year-old boy, was riding beside Bennie to Bennie's right. He first saw the car about 2 feet behind the truck on the left side getting ready to pass. Bennie was jumping, and took a step.

Arthur Searl, the driver of the wheat truck, testified that he was going 7 or 8 miles an hour, slowing

down to let the boy off at the. foot of the hill to get another truck; that he could not see to the west in the rear-view mirror on account of the legs of the boys sitting on the side of the truck; and that he asked twice if there was any car coming and got a reply of "no". once. The first thing he saw was when the boy flew past in the air after he had been hit. The truck was still rolling very slowly at the time, near the point where they had decided to stop. He did not know the boy was going to jump or was off the truck until he saw him in the air.

There is no evidence of the speed of the defendant's car other than the physical facts and the testimony of the defendant that he was traveling between 55 and 60 miles an hour.

The testimony of the plaintiff's witnesses as reflected on exhibit No. 1 is that deceased was thrown 101 feet and then rolled to. a total distance of 173 feet from the point of impact. The defendant's car went off the pavement on the north side at about the point of impact and went 216 feet where it upset in the borrow pit. The testimony of plaintiff's witnesses and the photograph, exhibit No. 12, show that the right front fender near the headlight on defendant's car was what struck the deceased.

The oil mat pavement at the scene of the accident was marked with a white, broken center line. Going up the hill both to the east and to the west were the customary yellow warning or no-passing lines approaching the crests of the hills. Also at the top of the hill to the west of the point of the accident, as shown on exhibit No. 2, was a highway sign. "Do Not Pass on Hills or Curves." The two yellow lines overlapped slightly at the bottom of the hill, and the accident occurred a short distance to the east of the beginning of the yellow line in the south lane of traffic ascending the hill to the east.

Appellee contends that the defendant was negligent

in crossing this yellow line into the north lane of traffic to pass the truck. Whether the defendant had pulled into the north half of the highway to pass the slowly-moving truck before he came to the yellow line in the south lane of traffic, or crossed the line near its beginning we do not believe is material in this case. The photograph, exhibit No. 2, shows that both the hill to the west and the one to the east of the point of the accident were gradually sloping hills, and the plat, exhibit No. 1, shows that the hill to the east has much less elevation and a more gradual slope than the hill to the west. There is no evidence of any vehicle approaching from the east.

The yellow line is a warning that the vision ahead is obstructed as to approaching vehicles, but we do not hold that it is an absolute prohibition against turning into the left-hand lane of traffic to pass a very slowly moving vehicle when there is sufficient vision ahead to permit such passing in safety.

The evidence shows no warning to defendant that the deceased was about to jump from the truck into the path of his car. We can only reach the conclusion that the deceased jumped without looking or, if he looked, failed to see the approaching car of the defendant which was within his line of vision before he jumped.

In the case of Troup v. Porter, 126 Neb. 93, 252 N. W. 611, this court said that the evidence of defendant's speed was sufficient to require submission to the jury on the question of defendant's negligence unless the negligence of decedent was more than slight in comparison thereto. In that case decedent ran between parked cars into the path of defendant's car. It was held that "decedent herein in stepping from between two parked automobiles directly in front of the defendant's car without looking is more than slight negligence in comparison with the negligence of the defendant * * *."

In Cuevas v. Yellow Cab & Baggage Co., 141 Neb. 662, 4 N. W. 2d 790, the rule was stated that: " ' "Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause." * * * See Eaton v. Merritt, 135 Neb. 363, 281 N. W. 620. Want of ordinary care, and not knowledge of the danger, is the test of contributory negligence. * * *' "

In Travinsky v. Omaha & C. B. St. Ry. Co., 137 Neb. 168, 288 N. W. 512, this court said: "We think that, as a matter of law, the last movement of the deceased constituted more than slight negligence contributing to cause the accident, * * *," and further held that: "The negligence does not arise from the single circumstance of whether the pedestrian looks or does not look. The determining element in this type of case is the sudden movement into the path of the vehicle followed by almost instantaneous collision."

We have considered all of the cases cited by the appellee, but in each of these cases there is some dispute in the testimony as to the actual facts, leaving a question for determination by the jury. In this case there were only two witnesses who actually saw the car strike the deceased. His brother, Charles Heinis, testified as follows: "Q- How quick did the car hit him after you had hollered at him? Do you have any idea about that? A- Just about right after. * * * Q- How far was the car from the truck when you saw it? A- Just behind it. * * * Q- And it was starting to go around when you saw it? A- Yes. Q- That was when you yelled, Bennie? A- Yes, and he jumped off the truck."

The other eyewitness, Kent Searl, testified: "Q- And then you say you saw the car right at the back of the

truck? A- Yes. Q- And then you looked at Bennie? A- Yes. Q- And he was jumping? A- Yes. Q- Just then the car hit him? A- Well, he probably took a step, because his legs were spread like he was ready to."

This undisputed testimony of the plaintiff's witnesses brings this case squarely within the rule laid down in the Troup case, *supra*, and subsequent cases above cited, that, regardless of whether the defendant may have been negligent, the negligence of the deceased was more than slight in comparison therewith and that the verdict should have been directed for the defendant.

The judgment of the trial court is reversed and the cause remanded with directions to sustain defendant's motion for judgment notwithstanding the verdict.

REVERSED AND REMANDED WITH DIRECTIONS.