CHARLES W. CORBITT, APPELLANT AND CROSS-APPELLEE, v. OMAHA TRANSIT CO., APPELLEE AND CROSS-APPELLANT. CHARLES W. CORBITT, APPELLEE, v. OMAHA TRANSIT CO., SUBSTITUTED DEFENDANT FOR OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, A CORPORATION, APPELLANT.

77 N. W. 2d 144

Filed May 11, 1956. Nos. 33868, 33877.

*Pilcher, Haney & Howard* and *Harry D. Haykin,* for appellant Corbitt.

*George L. DeLacy* and *William P. Mueller,* for appellee Omaha Transit Co.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought by Charles W. Corbitt in the district court for Douglas County, as plaintiff, against the Omaha & Council Bluffs Street Railway Company, now Omaha Transit Co., defendant, to recover damages for personal injuries sustained when he was in the act of crossing a street and was struck by a streetcar owned by the defendant and being operated by one of its employees.

The case was tried to a jury, resulting in a verdict in favor of the plaintiff and fixing the amount of his

recovery in the sum of $23,807. The defendant filed a motion for judgment notwithstanding the verdict, and in the alternative, a motion for a new trial. The trial court overruled the motion for judgment notwithstanding the verdict, but sustained the defendant's motion for new trial, and set aside the verdict. The plaintiff appealed from the order granting the new trial. The defendant appealed from the order overruling its motion for judgment notwithstanding the verdict. The defendant also made a cross-appeal in its brief in the appeal made by the plaintiff.

The parties stipulated that inasmuch as both parties had appealed, the appeals should be consolidated and that one bill of exceptions would be used on appeal.

While there are several assignments of error made by the plaintiff on his appeal and by the defendant on its separate appeal and cross-appeal, we deem the most important assignment of error to be the one made by the defendant that the trial court erred in overruling the defendant's motion for judgment notwithstanding the verdict. We determine this assignment of error.

The defendant, at the close of the plaintiff's evidence and at the close of all of the evidence, moved the court to either dismiss the plaintiff's cause of action or to direct the jury to return a verdict in favor of the defendant. In this connection, a motion for a directed verdict must for the purpose of decision thereon be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the evidence. See Milk House Cheese Corp. v. Chicago, B. & Q. R. R. Co., 161 Neb. 451, 73 N. W. 2d 679.

For convenience we will refer to the parties as they are designated in the district court and at times to the defendant as the transit company.

.

To determine the validity of the above assignment of error, and with the foregoing-stated rule in mind, we review the relevant and material evidence which we summarize as follows.

There is a plat in evidence, drawn to scale, which discloses certain measurements and distances relative to buildings located on the north side of Farnam Street which have no particular bearing in this case except as appears subsequently in the evidence. On the south side of Farnam Street, on the southwest corner of the intersection of Twenty-sixth Street, is the Lied Buick used car lot. The sidewalk that runs south from Farnam Street along the west side of Twenty-sixth Street is 6 feet 1 inch wide. Twenty-sixth Street is 40 feet 1 inch wide. On the southeast corner of Twenty-sixth Street and Farnam Street is the Webber Motors Company building which will be referred to in the opinion with reference to matters concerning the accident. From the west edge of this building to the west edge of the door into the office it is 29 feet 3 inches. The door is 7 feet 6 inches wide. From the east edge of this door to the west edge of the overhead garage door in said building it is 51 feet 6 inches. From the east edge of the overhead garage door of said building to the west edge of the east overhead door of said building it is 43 feet 4 inches. The east overhead door is 11 feet 11 inches wide.

Farnam Street runs east and west and there are streetcar tracks, one set for eastbound traffic and one set for westbound traffic. Streetcars leaving downtown Omaha going west travel on the north set of tracks, and those going east on the south set of tracks. The surface of the street is asphalt. There is a space of 4 feet 7 inches between the two sets of tracks. Rail measurements are taken to the gauge line which is the inside edge of the rail, and show the eastbound tracks to be 4 feet 8½ inches apart.

There is a pole located on the north curb in front of

the Barnhart Press building which is 126 feet from the east curb of Twenty-sixth Avenue.

On the southwest corner of Twenty-sixth Street and Farnam Street is a driveway into the used car lot which is 24 feet 3 inches wide from the east edge to the west edge.

There are numerous exhibits in evidence which show the entire area surrounding and in the immediate vicinity of the place where the accident occurred.

The plaintiff testified that he was 40 years of age and a laborer. On September 18, 1952, he was not working. He got up at 11 a. m., and went to a dentist to have four teeth extracted. He left the dentist's office about 2 p. m. After leaving the dentist's office, he stopped at a drug store and at the Virginia Cafe at Fifteenth and Douglas Streets for coffee. After leaving the Virginia Cafe, he walked to Twenty-fourth and Dodge Streets, and from there to Twenty-sixth and Farnam Streets. He decided to return to his room on Thirteenth Street. In order to do so, he had to cross Farnam Street. At that time he was directly north of the west side of the Webber Motors Company building on the east side of Twenty-sixth Street. On the north side of the street and at the area where he started to cross, there was a pole. He was standing by this pole before he started to cross. It was a clear day, the streets were dry, and it was about 6 p. m. He had on a light shirt, trousers, and a light hat. He started south across Farnam Street. He first looked to the east and observed traffic about a block east. Then he looked to the west. There he saw a streetcar stopped 10 feet west of the west curb line of Twenty-sixth Avenue. There were automobiles parked along the north side of Farnam Street, and just east of the cross walk in front of the Webber Motors Company building on the south side of Farnam Street. After he looked to the west and saw the streetcar stopped, he started across the street and was directly in line with the sidewalk on the east side of Twenty-sixth Street.

As he stepped off the curb he looked to the east again and saw traffic three-fourths of a block east. He proceeded to walk normally across the street. When he was near the north rail of the westbound streetcar tracks, he observed an automobile coming north on Twenty-sixth Street. The front of this automobile was about even with the front of the Webber Motors Company building on the east side of Twenty-sixth Street. No signals were given by its driver to indicate which direction he was going to turn. He slowed down to see which way the automobile coming into the intersection on Twenty-sixth Street would turn, east or west, to keep from getting struck by it if it turned east. He stopped on the north rail of the eastbound tracks. The automobile proceeded on across Farnam Street and turned west. As this automobile proceeded ahead and was making its turn, the plaintiff was looking toward the south intersection and could see both curb lines to the east and west of Twenty-sixth Street, and observed no streetcar in that area. When he ceased to look at the automobile, he went possibly two steps forward and he could see, out of the corner of his eye, a streetcar loom up. It was coming from the west, and at that time was 5 to 10 feet west of him. He involuntarily raised his hands upward, the streetcar struck him, and he blacked out. At the time he raised his hands, he testified that he was between the rails of the eastbound tracks. The next thing he remembered, he was in the County Hospital. He further testified that his right eye was injured in an industrial accident in 1944, and he had impaired vision in that eye, but he had good vision in his left eye. At no time when he was walking across Farnam Street did he hear any streetcar bell sound before the was struck. He walked in a straight line, and had no recollection of being thrown under the streetcar.

On cross-examination he testified that he knew there were streetcar tracks on Farnam Street before he

crossed it, and that one carried eastbound cars and the other westbound cars. He knew the streetcar he saw standing on the eastbound track would proceed east. He did not see the streetcar after he left the curb until just before it hit him. He further testified that he had stopped when the automobile was crossing Farnam Street to made its turn, and that when he hesitated on the north rail of the eastbound track, he was south of the center line of the street and westbound traffic was behind him.

The motorman of the transit company was called by the plaintiff and testified that when he first saw the plaintiff the plaintiff was to his left, directly in front of the streetcar, approximately in line with the west edge of the Webber Motors Company building on the south side of Farnam Street. Just before the streetcar struck the plaintiff, an automobile turned to the left in front of the streetcar. At that time the streetcar was at the entrance driveway into the Lied Buick used car lot. Under the conditions existing at the time of the accident, he could stop the streetcar within a distance of 40 feet.

A salesman employed by the Webber Motors Company testified that at the time of the occurrence of the accident he was inside the building on the south side of Farnam Street standing near the large window which is west of the front door on the ground floor. When he first saw the plaintiff he was between Twenty-fifth Avenue and the Car Craft Company on the north side of Farnam Street. At that time the plaintiff was walking west and proceeded to an iron light pole a little east of the entrance of the Barnhart Press building. He stopped at the pole and leaned against it. A man walked up, and apparently the plaintiff asked him a question. After that the plaintiff walked back and leaned on a parking meter directly west of the light pole and was looking to the west. His walk was unsteady. A streetcar proceeding east on the eastbound

tracks pulled into its regular loading zone to the west of Twenty-sixth Street on Farnam Street by the Lied Buick used car lot, and he believed a lady got off the car. He paid no further attention until he heard the air brakes being released on the streetcar. He then turned and looked north across Farnam Street and noticed that the plaintiff was walking off the curb south across Farnam Street with his hand in the air, and walking hurriedly. As the plaintiff got onto the track, the streetcar was practically upon him, and hit him. The streetcar then continued on east of the intersection and stopped about 12 feet past the front door of the Webber Motors Company building.

A witness and his wife and their child who was in a stroller were walking on the south side of Farnam Street going west and observed the plaintiff walking in the same direction on the north side of Farnam Street. As the plaintiff left the sidewalk and started across the street, he was walking in a diagonal direction from the northeast to the southwest. It seemed apparent to this witness that there would be an accident. His wife said: "That streetcar is going to hit him!" The plaintiff had his right arm extended as if trying to ward off the streetcar. He was going southwest when he started across the eastbound tracks. At that time the streetcar was very close to him, and when the streetcar struck the plaintiff, the plaintiff was almost directly in front of the streetcar. As soon as the plaintiff was hit, he dropped below the vision of this witness. When the streetcar stopped it was 10 feet west of the front door of the Webber Motors Company building.

On cross-examination this witness testified that the plaintiff walked normally; that when he put up his arm he was almost directly in front of the headlight of the streetcar which would place him approximately in the center of the track and at that time the streetcar was closer than 10 feet to the plaintiff; and that when his wife remarked that the plaintiff was going to be hit, this

witness looked up and at that time the plaintiff was standing in the area between the two lines of track, in the "dummy." He also testified that the plaintiff kept walking a couple of steps then all of a sudden he became aware of the streetcar. He did not stop until he was in the middle of the tracks, or until the time he was struck.

A witness who was a passenger on the streetcar, sitting on a cross seat three rows back from the front of the car on right-hand side, testified that the streetcar stopped at the first alleyway that goes into the used car lot on the south side of Farnam Street. A lady got off at the rear entrance of the car at that time. The streetcar then started at a speed of about 10 miles an hour. An automobile was coming from the south on Twenty-sixth Street into Farnam Street. The motorman observed the automobile, slowed the streetcar's speed, and the automobile proceeded across in front of the streetcar and then made a left turn on Farnam Street. The automobile was going a little faster than the streetcar and was about 5 feet distant from the streetcar when it crossed in front of it. He had been observing the plaintiff walking normally and pretty fast in a sort of southwest direction toward the westbound track, and he did not stop. The last time he saw the plaintiff he was somewhere between the south rail of the westbound car tracks and the north rail of the eastbound tracks, and when the plaintiff was in the "dummy" track, about 3 feet or so from the streetcar, this witness lost his view of the plaintiff. When the streetcar was about 3 feet from the plaintiff, its speed was 10 miles an hour. The motorman applied the brakes of the streetcar and when it stopped the front of it was about even with the door of the Webber Motors Company building. When the automobile came out of Twenty-sixth Street across Farnam Street, the plaintiff was east of the automobile.

The motorman testified that he started to work for

the transit company on August 6, 1952; that he was 52 years of age; that on September 18, 1952, at about 6 p. m., he was operating a streetcar proceeding east on Farnam Street; that he had three passengers, two ladies and a boy; that one of the ladies got off on Twenty-sixth and Farnam Streets; that he stopped the streetcar at the regular stop which is about 15 feet west of the east driveway entering the Lied Buick used car lot on the south side of Farnam Street; and that there is a pole just west of the east driveway into the Lied Buick used car lot with a yellow band about 2 feet wide which is slightly faded but can be seen, and it constitutes a stop signal for streetcars. After he let the lady off the streetcar, he closed the door and proceeded east. He sat in a special seat in the cab at the front of the street-car, and his eye level would be 7 or 7½ feet above the ground. There were three windows in the front of the streetcar. The one directly in front was a large window, and there were two narrow windows on the left and right sides of it. His position was almost directly behind the middle window. There was a controller a little to the left and in front of him, which he operated with his left hand. He explained the manner in which he started and stopped the streetcar. There was a foot brake to his right and in front of him. After the lady got off the car, he started it forward. He observed an automobile approximately half a block south on Twenty-sixth Street. Twenty-sixth Street runs a little up hill from Farnam Street south. This automobile came to a partial stop and then proceeded north, slowed up, and then crossed in front of the streetcar and made a left turn. When the automobile came across the eastbound tracks, it was 25 or 30 feet in front of the streetcar which was barely moving. The back wheels of the auto-mobile cleared the north rail of the eastbound tracks about the time the streetcar entered the intersection. The streetcar was in the vicinity of the east driveway of the Lied Buick used car lot when the automobile

crossed in front of it. He then pressed the controller around to three points, which increased the speed of the streetcar. Then he shut off the power, as it is a little downhill to the east. The streetcar was just about into the intersection. He first saw the plaintiff when he was immediately in front of the window to the left, in line with the west edge of the Webber Motors Company building. He saw the top of the plaintiff's head which appeared to him as if the plaintiff was in motion and coming around the front of the streetcar. He estimated the speed of the streetcar at that time at between 7 and 10 miles an hour. The instant he saw the plaintiff, he applied the brakes which locked the wheels of the streetcar. He did not sound the bell. The plaintiff disappeared from his view immediately. The streetcar came to a stop in front of the entranceway of the Webber Motors Company building. The front end of the streetcar was about 4 feet past the front door of the Webber Motors Company building when it came to a stop. After the streetcar stopped, he got out. He then told the position in which the plaintiff was lying under the streetcar.

On cross-examination there was some testimony with reference to a deposition which had been taken, wherein he testified that he stopped the streetcar in front of the church which is west of where he had stopped the streetcar according to his testimony at the trial. The church is on the north side of Farnam Street and the west side of Twenty-sixth Avenue. The regular stopping place for the streetcar is 55 feet west of the west curb of Twenty-sixth Street coming into Farnam Street from the south. The front wheels of the streetcar were 8 feet back from the front end of the car. He further testified that he had stopped the streetcar approximately 40 feet from the place where he applied the brakes, and that he could not have stopped the streetcar any sooner.

A fireman assigned to the rescue squad testified that the rescue squad arrived at the scene of the accident

about 6:06 p. m. They proceeded to jack up the two front wheels on the south side of the streetcar to enable them to get under it. He went under the streetcar to investigate the situation. The plaintiff was lying just ahead of the front wheels of the streetcar with his head to the south, his feet to the north, and his arm up against the right front wheel. They removed him from underneath the streetcar, placed him on a stretcher, and put him into the rescue unit.

A police officer who worked with another officer arrived at the scene of the accident at approximately 6:08 p. m. At that time the rescue squad was present and jacking up the front end of the streetcar. The streetcar was stopped 46 feet from the east cross walk. That was the measurement to the front end of the streetcar. He took the names of some persons who had seen the accident.

The defendant contends that the accident which occurred and the injuries suffered by the plaintiff were not caused by the negligence on the part of the operator of the defendant's streetcar, but were the direct and proximate result of plaintiff's own negligence which was more than slight and caused and contributed to any injuries sustained at said time as a result of the collision.

Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause. See, Eaton v. Merritt, 135 Neb. 363, 281 N. W. 620; Cuevas v. Yellow Cab & Baggage Co., 141 Neb. 662, 4 N. W. 2d 790.

Want of ordinary care, and not knowledge of the danger, is the test of contributory negligence. See, Welsh v. City of South Omaha, 98 Neb. 148, 152 N. W. 302; Klement v. Lindell, 139 Neb. 540, 298 N. W. 137; Cuevas v. Yellow Cab & Baggage Co., supra.

In Belville v. Bondesson, 130 Neb. 926, 266 N. W. 901, a pedestrian was crossing a street when he was struck by an automobile. There this court said: "In examining the question of plaintiff's contributory negligence, it is necessary for us to formulate some idea as to what an ordinarily cautious and prudent man would do under like circumstances. We think he would act about as follows: On reaching the intersection, he would look both to his right and to his left. Seeing that no cars were coming from the right that would endanger him before reaching the center of the street and determining that he could safely cross in front of cars coming from his left, he would proceed, being watchful of the cars whose traffic lanes he was crossing. Arriving in the center of the street, he would devote the greater part of his attention to cars coming from the south (in the instant case to cars coming from the west) whose traffic lanes he would cross in reaching the other side of the street, being alert, however, at all times, to the possibility that a car might appear where normally it would not be expected."

Section 39-751, R. R. S. 1943, provides in part: "The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary line of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices." A city ordinance to like effect is in evidence.

The plaintiff contends that in the instant case he had the right-of-way and argues that the failure of the streetcar to yield the right-of-way was negligence on the part of the defendant's motorman. This statute does not relieve the plaintiff of responsibility for the results of his own negligence. The streetcar could not change its course; it is not shown that it could have stopped

after the plaintiff placed himself in front of it and indicated that he was intent on crossing the street ahead of it. See Hughes v. Omaha & C. B. St. Ry. Co., 143 Neb. 47, 8 N. W. 2d 509.

It may be said that the plaintiff may not disregard the possibility of negligence on the part of the defendant, relying solely upon its statutory duty, then proceed to a place of danger and expect the defendant, whose streetcar cannot turn out or stop instantly, to be an insurer of his safety. See, Eggeling v. Chicago, R. I. & P. Ry. Co., 119 Neb. 229, 228 N. W. 361; Hughes v. Omaha & C. B. St. Ry. Co., *supra*. Therefore, the right-of-way statute is not conclusive of the plaintiff's right, under the evidence adduced in this case, to cross the eastbound streetcar tracks in the manner in which he did.

The following cases are applicable to the case at bar. In Travinsky v. Omaha & C. B. St. Ry. Co., 137 Neb. 168, 288 N. W. 512, this court stated the following rule: "When one, being in a place of safety, sees and is aware of the approach of a moving vehicle in close proximity to him, suddenly moves from the place of safety into the path of such vehicle and is struck, his own conduct constitutes contributory negligence more than slight in degree, as a matter of law, and precludes recovery." See, also, Cuevas v. Yellow Cab & Baggage Co., *supra*.

In Halliday v. Raymond, 147 Neb. 179, 22 N. W. 2d 614, we said: "However, as stated in Travinsky v. Omaha & C. B. Street R. Co., 137 Neb. 168, 288 N. W. 512: 'The negligence does not arise from the single circumstance of whether the pedestrian looks or does not look. The determining element in this type of case is the sudden movement into the path of the vehicle followed by almost instantaneous collision.' "

Therefore, if the plaintiff saw or should have seen the defendant's streetcar and then suddenly either walked into its path or into it, the above rule would apply. See, Cuevas v. Yellow Cab & Baggage Co., *supra;* Halli-

day v. Raymond, *supra;* Leonard v. Trimble, 133 Neb. 254, 274 N. W. 593; McDonald v. Omaha & C. B. St. Ry. Co., 128 Neb. 17, 257 N. W. 489; Heinis v. Lawrence, 160 Neb. 652, 71 N. W. 2d 127.

We conclude from the evidence that after the plaintiff left the north curb of Farnam Street and looked to the left and right for approaching traffic and had passed to the center of the street so that westbound traffic would be behind him, it then became his duty to devote the greater part of his attention to cars coming from the west whose traffic lanes he would cross in reaching the south side of Farnam Street. He did not look after leaving the curb. All that he did see before making the fatal steps into the approaching streetcar was the south curb line and the east and west curb lines of Twenty-sixth Street. Under such a situation, the aforecited rules prevail. The conclusion is inescapable that the negligence of the plaintiff contributed to, if it was not, the proximate cause of the accident, and that he was guilty of such contributory negligence that any recovery is barred as a matter of law.

Where the facts adduced to sustain an issue are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the court to decide the question, as a matter of law, rather than submit it to a jury for determination. See, McIntosh v. Union P. R. R. Co., 146 Neb. 844, 22 N. W. 2d 179; Allen v. Kavanaugh, 160 Neb. 645, 71 N. W. 2d 119; Milk House Cheese Corp. v. Chicago, B. & Q. R. R. Co., *supra.*

"In a case where a motion has been made at the close of all of the evidence for a directed verdict, which motion should have been sustained but was overruled and the case was submitted to a jury which returned a verdict contrary to the motion, and a motion for judgment notwithstanding the verdict is duly filed, it is the duty of the court to sustain the motion and render judgment in accordance with the motion for a directed verdict." Halsey v. Merchants Motor Freight, Inc., 160 Neb. 732,

71 N. W. 2d 311. See, also, Wax v. Co-Operative Refinery Assn., 154 Neb. 42, 46 N. W. 2d 769.

"In an appeal to reveiw the ruling of the district court on a motion for new trial the Supreme Court may order and direct judgment to be entered in favor of the party entitled thereto." Wax v. Co-Operative Refinery Assn., *supra*.

The judgment of the trial court is reversed and the cause is remanded with directions to render judgment notwithstanding the verdict in favor of the defendant.

REVERSED AND REMANDED WITH DIRECTIONS.