ROBERT E. EDMUNDS ET AL., APPELLANTS AND CROSS-APPELLEES, V. ROY C. RIPLEY, APPELLEE AND CROSS-APPELLANT.
112 N. W. 2d 385

Filed December 1, 1961. No. 35002.

*Johnston & Grossman, Ralph D. Nelson, Chambers, Holland, Dudgeon & Hastings, Baylor, Evnen, Baylor & Urbom,* and *John A. Curtiss,* for appellants.

*Cline, Williams, Wright, Johnson, Oldfather & Thompson* and *Charles E. Wright,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

This is an action brought by Robert E. Edmunds, hereinafter referred to as the plaintiff, a police officer employed by the city of Lincoln, in the district court for Lancaster County, against Roy C. Ripley, defendant, to recover damages for personal injuries received by virtue of a collision between a motorcycle driven by the plaintiff and an automobile driven by the defendant at the intersection of Twenty-sixth and O Streets in the city of Lincoln. The City of Lincoln is made a plaintiff, and is the owner of the motorcycle driven by Edmunds at the time of the accident. The Zurich Insurance Company is made a plaintiff, and is the compensation insurer for the city of Lincoln. Both the City of

Lincoln and the Zurich Insurance Company are in this case as a matter of subrogation to any recovery that the plaintiff Edmunds may succeed in obtaining.

At the conclusion of the trial the defendant moved for dismissal of the plaintiff's petition and cause of action on the ground, among others, that the evidence established that the plaintiff was guilty of negligence more than slight. The trial court sustained the defendant's motion, dismissed the plaintiff's petition and cause of action, and dismissed the defendant's counterclaim. The Zurich Insurance Company filed a motion for new trial, the plaintiff Edmunds filed a motion for new trial, and the defendant filed a motion for new trial on the dismissal of the defendant's counterclaim. All of the above-mentioned motions were overruled. The plaintiffs appealed to this court.

The pertinent assignment of error by the plaintiffs is that the verdict is contrary to the evidence and the law.

It is not questioned that on April 7, 1959, at approximately 10:15 p.m., the accident occurred.

The record shows that O Street runs east and west and has four traffic lanes, two of which run east and two of which run west. There is an aerial photograph of the intersection of Twenty-sixth and O Streets in evidence, which was made to the scale of 1 inch equaling 20 feet. The distance between the lot lines on O Street is 120 feet, and the distance between the lot lines of Twenty-sixth Street is 100 feet. O Street, at the time of the accident, was approximately 70 feet in width and Twenty-sixth Street south of the intersection was approximately 48 feet in width.

The plaintiff's petition alleges that the defendant negligently turned his automobile, without signaling, in front of and in the path of the plaintiff and the motorcycle he was driving; that the defendant was negligent while driving east on the north and wrong side of O Street in the wrong lane of traffic as he approached the intersection; that at the intersection the defendant

wrongfully "cut the corner" entering the intersection from the west, and turned his automobile directly in front of the plaintiff, blocking the plaintiff's path and causing the collision; that the defendant failed to keep a proper lookout for other vehicles, and especially the motorcycle driven by the plaintiff; and that all of such negligence was the proximate cause of the collision and the injuries suffered by the plaintiff.

The defendant's answer and counterclaim denied specifically each and every allegation of negligence alleged in the plaintiff's petition, and alleged that the accident was not caused or contributed to by the defendant; that the accident was proximately caused and contributed to by the negligence of the plaintiff which was more than slight in the following particulars: That the plaintiff operated the motorcycle at an excessive and unreasonable rate of speed and at a speed which was greater than reasonable and prudent under the conditions then existing; and that the plaintiff failed to maintain a proper lookout for traffic at the time and place, and in particular for the vehicle of the defendant.

The defendant's counterclaim restated the charges of negligence alleged against the plaintiff, and prayed for damages in the amount of $473.10, constituting damage to the defendant's vehicle.

The reply of the plaintiff denied each and every allegation of the defendant's answer relating to negligence alleged against such plaintiff, and in answer to the defendant's counterclaim denied every allegation therein not admitted.

"A motion for a directed verdict must for the purpose of decision thereon be treated as an admission of the truth of all material and relevant evidence on behalf of the party against whom the motion is directed, and such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence."

Larsen v. Omaha Transit Co., 165 Neb. 530, 86 N. W. 2d 564.

The burden of proof is on the plaintiff to show that there was a negligent act or omission by the defendant and that it was the proximate cause of plaintiff's injury. See Hansen v. Henshaw, 163 Neb. 191, 79 N. W. 2d 15.

" 'Negligence is the doing of something which an ordinarily prudent person would not have done under the same or similar circumstances, or the failure to do something which an ordinarily prudent person would have done under the same or similar circumstances.' " Burhoop v. Brackhan, 164 Neb. 382, 82 N. W. 2d 557.

"Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause." Corbitt v. Omaha Transit Co., 162 Neb. 598, 77 N. W. 2d 144.

"Proximate cause, as used in the law of negligence, is that cause which in a natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred." Schupe v. County of Antelope, 157 Neb. 374, 59 N. W. 2d 710.

The rule is that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. See, Edgar v. Omaha Public Power Dist., 166 Neb. 452, 89 N. W. 2d 238; Armer v. Omaha & C. B. St. Ry. Co., 153 Neb. 352, 44 N. W. 2d 640.

"A mere scintilla of evidence is not enough to require the submission of an issue to the jury. It is the duty of a trial court to direct a verdict where the evi-

dence is undisputed or where the evidence, though conflicting, is so conclusive that it is insufficient to sustain a verdict and judgment. Fairmont Creamery Co. v. Thompson, 139 Neb. 677, 298 N. W. 551; Edgar v. Omaha Public Power Dist., 166 Neb. 452, 89 N. W. 2d 238." Johnsen v. Taylor, 169 Neb. 280, 99 N. W. 2d 254.

The record shows that the plaintiff was operating a motorcycle westbound on O Street in the northernmost lane of traffic at a speed of approximately 20 to 25 miles an hour. He testified that there was a vehicle to his left proceeding in the same direction, which was traveling at a slightly slower rate of speed than he was; that as this vehicle and the plaintiff approached the intersection of Twenty-sixth and O Streets and crossed the crosswalk, the plaintiff's motorcycle was to the right and at the rear of the vehicle which was to his left; that he observed an eastbound vehicle turn to the left of the centerline and turn suddenly in front of him; and that he put on his brake and attempted to stop the motorcycle from sliding into the vehicle which was turning to the left or north into the intersection of Twenty-sixth and O Streets. The plaintiff further testified that the speed limit at that time on O Street was 35 miles an hour; that when he first saw the defendant's vehicle turn to the left suddenly in front of him, it was at the west side of the intersection going to the left across the centerline of O Street; that this vehicle was not in the intersection when it started to turn; that it crossed the centerline before it made the left turn and entered the intersection; and that he first observed the headlights turned at an angle to the left before the defendant's vehicle got to the west crosswalk of Twenty-sixth Street. The plaintiff further testified that he applied the brake on the motorcycle and attempted to lean it to the left so as to get it on the pavement and slide it on its side; that as he applied the brake the rear wheel apparently locked and he started to slide; that the impact shoved him down in the seat of the motorcycle;

that he felt his back snap, and the seat spring of the motorcycle catapulted him over the rear of the defendant's vehicle and down O Street; that he fell on his left knee and elbow, at which time he turned his head toward the east and saw the motorcycle spinning down O Street toward him; and that he fell approximately 40 or 45 feet southwest of the point of impact. He further testified that the front wheel and the right front crashbar of the motorcycle collided with the rear part of the defendant's vehicle.

On cross-examination the plaintiff testified that prior to the time he reached the intersection of Twenty-seventh and O Streets he was traveling approximately 25 to 30 miles an hour; that when he passed through the intersection of Twenty-seventh and O Streets he was traveling 10 to 15 miles an hour; that he increased his speed after he passed through the intersection of Twenty-seventh and O Streets; that when he first saw a vehicle, which turned out to be a Buick vehicle, he was traveling 20 to 25 miles an hour; that when he was first aware of the Buick vehicle he was approximately one-half or three-fourths of a block west of the intersection of Twenty-seventh and O Streets; that the speed of the Buick vehicle was slower than he was traveling; that as he approached to within 100 feet of the intersection of Twenty-sixth and O Streets his speed was 20 to 25 miles an hour; that when he reached the intersection of Twenty-sixth and O Streets, the front of his motorcycle was about even with the rear bumper of the Buick vehicle; that he was one car length west of the east curb of Twenty-sixth Street when he first observed the defendant's vehicle, at which time the front bumper of the Buick vehicle was about half a car length ahead and to the left of him; that as he came abreast of and passed the rear part of the Buick vehicle, he observed a red flash which he assumed was the brake lights of the Buick vehicle; and that he continued on past the Buick vehicle and into the intersection.

Warren Chrastil, a motorcycle officer employed by the City of Lincoln, testified that he investigated the accident; that he arrived at the scene of the accident approximately 3 or 4 minutes after it had occurred; that when he arrived he observed a 1959 Oldsmobile with the rear end approximately in the north crosswalk of the intersection, facing in a northeasterly direction; that he also observed the motor number 8 on a 1957 Harley motorcycle in the middle of O Street, facing in a northeasterly direction; and that the plaintiff was lying on the pavement on his back, covered with a blanket, his head to the east and his feet to the west, approximately 4 to 5 feet in a southwesterly direction from the motorcycle. He asked the defendant which direction he was traveling, and the defendant stated that he was going east on O Street, making a left turn to go north on Twenty-sixth Street; that he observed the motorcycle just before the impact; and that he was traveling at a rate of speed of 8 to 10 miles an hour just prior to the time of the accident. The defendant also stated that he was on the inside lane of traffic nearest the centerline, traveling east on O Street, planning to make a left turn; that the left blinker on his car was on, signaling the turn; that he observed another vehicle in the inside lane westbound coming toward him; that he had slowed up; and that he thought he had time to make the left turn, made the left turn, and then the collision occurred. This police officer further testified that he observed some debris consisting of fine particles of dirt from under the vehicles, chrome pieces from the motorcycle and the defendant's vehicle, and glass from the right red light on the motorcycle, lying on the pavement in the northwest corner of the intersection. This witness further testified that there was a single skid mark leading from the point of impact east on O Street; and that there were no skid marks attributable to the defendant's vehicle.

On cross-examination this witness testified that on

the basis of the marks he found and the debris, he made a determination as to where the accident occurred; that he measured the debris from the center of the intersection and found the debris to be approximately 20 feet 2 inches north and 15 feet west of the center of the intersection; and that the skid marks ran from the east to the west a distance of 40 feet and 2 inches.

The defendant testified that on the date of the accident he was the owner of a 1959 4-door Oldsmobile sedan, registered in his name and in his wife's name, which was equipped with headlights, brakes, and turn signal indicators. When indicating a turn, at the front of the vehicle there is a white light and in the rear of the vehicle there is a red light. He further testified that prior to the time of the collision he was driving east on O Street in the inside lane, that is, the lane nearest the center of the street; that his wife was with him; that his headlights were on; that he intended to make a left turn and had his left blinker lights on; that he commenced the signal for the turn approximately one-half to three-fourths of a block west of Twenty-sixth and O Streets; that after he crossed the intersection of Twenty-fifth and O Streets he turned on his indicator to indicate a left turn; that as he entered the intersection of Twenty-sixth and O Streets there was a car approximately one-third or one-half of a block east of that intersection; that the speed of his vehicle at that time was 8 to 10 miles an hour; that he had allowed his car to slow down going up hill; and that he entered the intersection and saw the car coming from the east which was far enough back that he went ahead and started to make his turn. He further testified that as he had almost completed the turn, his wife said "Oh Roy," and he glanced in her direction and at that time the front of his vehicle was approximately even with the north curb line; that he saw the motorcycle; that he could not say how close the motorcycle was at that time but it was right on top of him, and he felt the impact; that he com-

menced his left turn approximately 7 or 8 feet east of the white centerline on O Street which divides the four lanes of traffic; that the speed of his vehicle at the time of the impact was 7 to 9 miles an hour; that at the time of the impact his vehicle was facing more north than east; that after the impact his car was almost straddle of the east-west crosswalk on the north side of O Street; that when it stopped, it was faced in a northeasterly direction and had moved a distance of 18 or 19 feet; that he applied his brakes and the wheels of his vehicle did not skid; and that the front wheel of the motorcycle came in contact with his vehicle near the front of the right rear wheel, causing the tire to blow out, damaging the wheel and the right rear door. He further testified that as he commenced to turn his vehicle to the left he made an observation to the east of the intersection and observed one vehicle about one-third or one-half of a block east of the intersection, and as he continued to make the turn he observed only this one vehicle which was moving west in the inside lane; and that during the time he was making this turn his observation to the east did not reveal the presence of the motorcycle. After he brought his vehicle to a stop, he got out of it and saw the motorcycle and the plaintiff lying in the street. He went down to see how badly the plaintiff was hurt. He found the plaintiff 12 to 15 feet west of the motorcycle. He testified that he went back to his car and got two blankets and covered the plaintiff. This witness further testified that he bent over the plaintiff to stop him from crawling toward his motorcycle and the plaintiff asked him if he was the driver of the other vehicle and said: "I am sorry I hit you. I just didn't see you." The plaintiff denied making this statement.

On cross-examination this witness testified that he did not see the motorcycle until his wife said "Oh Roy," and at that time there was nothing he could do to avoid the accident. He further testified that when he first

saw the motorcycle it was practically 10 feet away from him. He estimated that he could see for 6 blocks east on O Street prior to the time of making his turn to the left, and stated that he would have no trouble in seeing traffic coming down O Street on the north side of the street, at least as far as Twenty-seventh Street; that if he had seen the motorcycle he would not have made the left turn; that there was a headlight operating on the motorcycle at the time of the collision; that the debris was approximately 20 feet north and around 9 or 10 feet west of the center of the intersection; that at the time of the collision the plaintiff was more than half way through the intersection; that from whatever point he started to make his turn to the point where the collision occurred, he at no time saw the motorcycle coming straight down O Street until it was so close to him that he could not do anything about it.

On redirect examination the defendant testified that during the time he was turning to the left he observed the Buick vehicle coming toward him and observed the lane of traffic immediately north of the Buick, but his view of that traffic lane was somewhat obstructed by the Buick vehicle; that he directed his attention to the crosswalk directly in front of him; that he did not have a clear view of the northernmost westbound traffic lane; and that his vehicle was 18.4 feet in length.

The defendant's wife corroborated his testimony relating to the action of the defendant in signaling and progressing through the intersection.

Robert F. Ambrose testified that he observed the collision while sitting in his car which was facing west at the intersection of Twenty-seventh and O Streets; that he observed the motorcycle officer approach the intersection of Twenty-seventh and O Streets, slow down, then proceed through the red light at Twenty-seventh and O Streets; that the motorcycle was following closely behind a westbound car as it approached the intersection of Twenty-sixth and O Streets, at which

time the motorcycle officer swerved his motorcycle sharply to the right lane, passing the westbound vehicle on its right side; and that as the motorcycle and the west bound vehicle were approaching the intersection of Twenty-sixth and O Streets, the motorcycle was close behind that vehicle.

The plaintiff asserts that the defendant failed to yield the right-of-way, in violation of section 701 (b) of an ordinance of the city of Lincoln which provides: "The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first mentioned vehicle, provided the driver of the vehicle turning left has given a plainly visible left turn signal. When two vehicles enter an intersection at approximately the same time, from the opposite directions, the driver of the vehicle desiring to turn to the left therein shall yield the right of way to the other vehicle."

The plaintiff did not allege in his petition that the defendant failed to yield the right-of-way.

"A recovery cannot be had for acts of negligence not alleged in the petition. The rule is the allegata and probata must agree." Lund v. Holbrook, 153 Neb. 706, 46 N. W. 2d 130.

The plaintiff alleged that the defendant "cut the corner" entering the west edge of the intersection from the north half of O Street, and violated section 715 (b) of an ordinance of the city of Lincoln which provides: "The driver of a vehicle intending to turn to the left at a street intersection, except to enter or leave a one-way street, shall approach such street intersection in the lane for traffic to the right of and nearest to the center line of the street, and the left turn shall be made by passing to the right of such center line where it enters the street intersection and upon leaving the street intersection by passing to the right of the center line of the street when entered, and shall at all times

keep to the left of the center point of the intersection."

The plaintiff testified that the defendant's vehicle was not in the intersection when it started to turn. The evidence shows that the plaintiff had very little knowledge as to where the west edge of the intersection was located, and was not in a position to state whether or not the defendant had entered the intersection when he commenced turning.

The location of the impact, as shown on exhibit No. 6, places the defendant's vehicle almost midway between the prescribed points of entry and departure for vehicles making a left turn, in accordance with the provisions of section 715 (b) of said ordinance.

The allegations in the plaintiff's petition with reference to the defendant failing to signal his intention to make a left turn and that his brakes were defective, are not effective under the facts in this case, for the reason that evidence shows conclusively that the defendant did signal a left turn, and there is no evidence of any kind relating to the brakes on his vehicle.

The evidence shows that the plaintiff was within the confines of a city intersection at night, traveling at a rate of speed of 25 miles an hour, at which time his view ahead and to his left was partially obscured so that he was in no position to observe the defendant's eastbound vehicle. Consequently, he had placed himself in a position of danger to the extent that a collision could not have been avoided.

The defendant cross-appeals, contending that the trial court erred in dismissing the defendant's counterclaim. The record discloses the following. On December 14, 1960, at approximately 3:47 p.m., after the conclusion of all of the evidence, the defendant moved to dismiss plaintiff's petition and cause of action. Immediately thereafter the defendant's motion was submitted to the trial court. The trial was adjourned until 9 a.m., the following day. On December 15, 1960, at 9:30 a.m., the court convened pursuant to adjournment, with all

counsel present, and advised counsel that it was sustaining the defendant's motion for directed verdict against the plaintiff, and was dismissing the defendant's counterclaim. Immediately thereafter the plaintiffs, Edmunds and the City of Lincoln, moved for dismissal or a directed verdict in connection with defendant's counterclaim, which had already been dismissed by the announcement of the court. These motions were overruled by the court on December 15, 1960.

Prior to September 20, 1957, section 25-834, R. R. S. 1943, provided: "The court, at any time before the final submission of the cause, on motion of the defendant, may allow a counterclaim or set-off, set up in the answer, to be withdrawn, and the same may become the subject of another action. On motion of either party, to be made at the time such counterclaim or set-off is withdrawn, an action on the same shall be docketed and proceeded in as in like cases after process served; and the court shall direct the time and manner of pleading therein. If an action be not so docketed, it may afterwards be commenced in the ordinary way."

In Harbert v. Mueller, 156 Neb. 838, 58 N. W. 2d 221, this court held: "Defendant pleaded a counterclaim and, upon the conclusion of the plaintiff's evidence, moved for and procured an order of the court directing a verdict for defendant upon plaintiff's cause of action. *Held,* that defendant, by moving for a directed verdict and obtaining a favorable ruling thereon, waived a hearing on his counterclaim when the counterclaim was not withdrawn by him before final submission of the cause as required by statute."

In 1957 the Legislature amended section 25-834, R. R. S. 1943, by adding the following provision: "(2) Notwithstanding the provisions of subsection (1) of this section, a motion for directed verdict or dismissal may be made by a defendant without withdrawing a counterclaim or cross-petition. In the event such motion for directed verdict or dismissal is overruled the

trial may proceed to final submission of the cause including the counterclaim or cross-petition. In the event such motion for directed verdict or dismissal is sustained, the counterclaim or cross-petition shall be continued as a separate cause and trial thereon had at a subsequent jury the same as if it had been filed as a separate action." Laws 1957, c. 82, § 1, p. 328.

The motion made by the plaintiffs to dismiss the defendant's counterclaim was made subsequent to the dismissal of the counterclaim by the trial court, and the plaintiffs' motions were overruled by the trial court. We conclude that the defendant is entitled to have his counterclaim continued for further proceedings, according to law. The defendant's cross-appeal is sustained.

For the reasons set forth in this opinion, we affirm the judgment of the trial court in directing a verdict for the defendant, reverse the judgment of the trial court in dismissing the defendant's counterclaim, and remand the cause relating thereto for further proceedings according to law.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.