FLOYD A. TREFFER, APPELLANT, v. ELWOOD YALE SEEVERS ET AL., APPELLEES.

237 N. W. 2d 114

Filed December 31, 1975. No. 40104.

Boland, Mullin & Walsh, for appellant.

Maupin, Dent, Kay, Satterfield, Girard & Scritsmeier and Dale A. Romatzke, for appellees.

Heard before SPENCER, BOSLAUGH, and BRODKEY, JJ., and COLWELL and RIST, District Judges.

BOSLAUGH, J.

This is an action for damages arising out of a collision between a motorcycle which was being operated by the plaintiff and a 1953 Allis Chalmers farm tractor being operated by the defendant Susan K. Seevers, now Susan K. Seevers Riecks. The defendant Elwood Yale Seevers is the father of Susan and was riding on the tow bar of the tractor at the time of the accident. The plaintiff was severely injured in the accident.

The accident happened at about 6:40 p.m. on June 17, 1973, at the intersection of State Highway No. 21 and a county road, known as the Sumner Road, approximately 1.7 miles south of Broken Bow in Custer County, Nebraska. Highway No. 21 is surfaced with blacktop and is approximately 24 feet wide. The Sumner Road is surfaced with gravel and is approximately 27 feet wide. The Sumner Road forms a T-intersection and runs east from Highway No. 21. About 500 feet south of the intersection Highway No. 21 curves to the west. Traffic 496 feet south of the intersection has a clear view of traffic approaching from the north.

The weather was cloudy but the road was dry and visibility was good. Shortly after the accident it began to rain.

At the time the accident happened the Seevers tractor was towing a rake. The tractor was about 9½ feet long and the rake was 6 or 7 feet long. Elwood had been working in a field about 1 mile north of the intersection and was going to his home which is south and east of the intersection. The tractor had made a left turn and was proceeding east on Sumner Road when the front of the motorcycle struck the right side of the tractor just behind the front wheels.

The tractor stopped instantly because the distributor cap on the motor was knocked off by the impact. After the collision the tractor was facing mostly south but a little bit to the east with the right rear wheel about 3 feet east of the east edge of the blacktop of Highway No. 21. The front of the tractor was about 12 feet north of the south edge of Sumner Road. The rake was still coupled to the tractor and headed in an easterly direction. Photographs made at the scene of the accident show the right rear wheel of the rake near the east edge of the blacktop.

The evidence as to how the accident happened is in conflict. Susan, who was 16 years of age at the time of the accident, was operating the tractor which had been proceeding in a southerly direction on Highway No. 21. She testified that when she reached the intersection she stopped the tractor and looked to the south. She saw no traffic approaching from the south, so she commenced the left turn on to the Sumner Road. The impact occurred after the tractor had left the paved surface of Highway No. 21 and was on the Sumner Road. Susan did not see the plaintiff before the impact.

Elwood, Susan's father, testified that Susan stopped the tractor near the west edge of Highway No. 21 across from the center of Sumner Road. Elwood looked to the south and then to the north. There was no traffic in

sight to the south but there was a car approaching from the north at a distance of 1/2 to 3/4 of a mile away. Elwood did not look to the south again and did not see the plaintiff until just before the impact when the motorcycle was just a few feet away.

The plaintiff testified that as he came around the curve on Highway No. 21 south of the intersection, he was traveling north at between 35 to 40 miles per hour. He first saw the Seevers tractor when he was about 400 feet south of the Sumner Road. The tractor was then 40 to 45 feet north of the intersection. When he was about 45 or 50 feet south of the Sumner Road he saw the tractor turn across his lane of travel to go east on Sumner Road. His speed was then about 35 miles per hour. He turned to the right and applied the rear brake by pushing on the pedal "pretty hard." He did not apply the front brake which was separately controlled. The motorcycle left a skid mark 39 feet long leading up to the point of impact. The plaintiff estimated his speed at the time of the impact as 10 to 15 miles per hour. He estimated the tractor traveled 15 to 16 feet after he applied his brake until the impact.

The plaintiff's wife was following the motorcycle in the family automobile at a distance of about 400 feet and saw the accident. Her testimony corroborated that of the plaintiff generally.

An ambulance attendant testified that on the way to the hospital the plaintiff asked his wife what had happened and where did the tractor come from. The plaintiff was semiconscious at that time and appeared to be confused and disoriented.

The jury returned a verdict for the defendants on the plaintiff's petition and for the plaintiff on the defendants' counterclaim. The plaintiff has appealed and contends the trial court should have directed a verdict for the plaintiff on liability, should not have submitted the issue of contributory negligence to the jury, and that certain requested instructions should have been given.

In determining whether the plaintiff was entitled to a directed verdict on all or some of the issues the evidence must be considered in the light most favorable to the defendants. In determining whether a party is entitled to a directed verdict the evidence must be considered most favorably to the other party. Every controverted fact must be resolved in his favor, and he is entitled to the benefit of every reasonable inference that may be drawn therefrom. Hacker v. Perez, 187 Neb. 485, 192 N. W. 2d 166.

In order for the plaintiff in this case to have been entitled to a directed verdict on liability it would have been necessary for the evidence to show the defendants were guilty of negligence as a matter of law, that their negligence was the proximate cause of the accident and the plaintiff's injuries, and that the plaintiff was not guilty of contributory negligence that was more than slight.

The specifications of negligence alleged in the petition related to lookout, control, warning signals, right-of-way, and failure to stop or turn aside. There was evidence of negligence on the part of the defendants, but under the circumstances of this case there was no evidence of negligence as a matter of law.

Generally, the failure to see an approaching vehicle is not negligence as a matter of law unless the vehicle is undisputably located in a favored position. See Jones v. Consumers Coop. Propane Co., 186 Neb. 629, 185 N. W. 2d 458. Under section 39-636, R. R. S. 1943, a driver intending to make a left turn is not required to yield the right-of-way to a vehicle approaching from the opposite direction unless it is within the intersection or approaching so close as to constitute an immediate hazard. In this case the evidence is in sharp conflict as to where the plaintiff was at the time the Seevers tractor commenced to turn left.

Although the plaintiff testified he was only 45 or 50 feet south of the intersection when the Seevers tractor

began to turn into the Sumner Road, the defendants testified the plaintiff was not in sight when they looked to the south before commencing the turn. This evidence presented a question of fact to be resolved by the jury.

The evidence was similarly in conflict in regard to contributory negligence. The specifications of contributory negligence alleged in the answer related to lookout, control, right-of-way, and excessive speed. The evidence when considered most favorably to the defendants tended to support these allegations and presented questions for the jury.

While there was no direct evidence of speed in excess of the posted speed limit, there was circumstantial evidence from which the jury might have concluded that the plaintiff was traveling at an excessive rate of speed under the circumstances. The defendants' testimony that the plaintiff was not in sight when the tractor commenced the left turn and the evidence concerning damage to the tractor was relevant to this issue. There was also some evidence to the effect that the motorcycle veered to the right or "fishtailed" when the brakes were applied. The photographs indicate the skid mark left by the motorcycle may have started near the centerline of Highway No. 21.

Where reasonable minds may draw different conclusions and inferences from the evidence as to the negligence of the defendant and the contributory negligence of the plaintiff and the degree thereof when one is compared with the other, the issues must be submitted to the jury. Schmidt v. Orton, 190 Neb. 257, 207 N. W. 2d 390.

Since the jury accepted the defendants' evidence as to how the accident happened, much of the plaintiff's evidence must be disregarded. We think the evidence presented questions of negligence and contributory negligence which were properly submitted to the jury. The

record sustains the finding that the accident was the result of the combined negligence of the parties.

The plaintiff also complains of the trial court's refusal to give his requested instructions Nos. 4 and 7 in their entirety. The only portion of requested instruction No. 4 not given was not applicable to the evidence in this case. Requested instruction No. 7 related to lookout and stated that a motorist has a duty to look at a time and place where observation would be effective and should be made before a turning movement. The trial court gave the pattern instruction on lookout, NJI No. 7.03, and an additional instruction on the effect of the failure to see an approaching vehicle which is in a favored position. The instructions given were adequate and there was no prejudice to the plaintiff in refusing to give the requested instructions.

The judgment of the District Court is affirmed.

AFFIRMED.