ELIZABETH HOLLY, APPELLANT, V. CHARLES MITCHELL, APPELLEE.

328 N.W.2d 750

Filed December 30, 1982. No. 81-598.

Martin A. Cannon and Cynthia G. Irmer of Matthews, Cannon & Riedmann, P.C., for appellant.

Robert D. Mullin of Boland, Mullin & Walsh, for appellee.

BOSLAUGH, MCCOWN, CLINTON, and WHITE, JJ., and BRODKEY, J., Retired.

BRODKEY, J., Retired.
Elizabeth Holly, plaintiff and appellant herein, appeals to this court from the verdict of the jury in favor of the defendant, Charles Mitchell, in an action brought by the plaintiff in the District Court for Douglas County, Nebraska, in which the plaintiff sought damages from the defendant for personal injuries sustained by her as a result of a car-pedestrian accident which occurred on September 26, 1979, at approximately 4:30 p.m., at 15th and Douglas Streets in Omaha, Nebraska. In her petition she alleged that she was a pedestrian in a crosswalk on Douglas Street at the east side of its intersection with 15th Street and that defendant had been northbound on 15th Street and turned onto Douglas

Street while plaintiff was in the crosswalk, striking her and causing serious injuries as set forth in her petition. Plaintiff alleged defendant was negligent in failing to keep a proper lookout, in driving at an excessive rate of speed for the conditions then and there existing, and in failing to yield the right-of-way to plaintiff, who alleges she was in the crosswalk at the time. By way of answer to plaintiff's petition, the defendant admitted the happening of the accident at the time and place in question but denied all other allegations and, further answering, alleged that the sole proximate cause of the accident and resulting injuries was the negligence or contributory negligence of the plaintiff herself, which negligence was more than slight and sufficient in law to bar her recovery. In her reply, plaintiff specifically denied that she was in any manner contributorily negligent. The matter was submitted to the jury on the issues of the negligence of the defendant and the contributory negligence of the plaintiff, and their comparative negligence, and, as stated above, the jury found for the defendant.

In her brief on appeal to this court, plaintiff makes four assignments of error which she contends require that the judgment of the trial court be reversed and that she be given a new trial. Summarizing, these are that (1) the trial court erred in submitting the question of defendant's negligence to the jury because the evidence shows that he was negligent as a matter of law; (2) the trial court erred in submitting the issue of plaintiff's contributory negligence to the jury when there was no evidence of contributory negligence; (3) the trial court erred in submitting to the jury instruction Nos. 13 and 13a, with reference to the relative duties of the parties in regard to keeping a proper lookout, which instructions plaintiff claims were prejudicially harmful to her; and (4) the trial court erred in refusing to give to the jury certain proposed instructions submitted by the plaintiff. We affirm the ver-

dict of the jury and the judgment entered thereon by the trial court.

By way of factual background, it appears from the record in this case that both 15th Street and Douglas Street in the city of Omaha are one-way streets, Douglas Street being one way eastbound and having three lanes or perhaps four in addition to the parking lanes on each side of the street. Fifteenth Street intersects Douglas Street at right angles and is a one-way northbound street, also having multiple lanes but slightly narrower than Douglas Street, which the evidence establishes was approximately 68 feet wide. There are traffic lights at the intersection on the north and east sides of the intersection, with the usual green, yellow, and red lights thereon. There is no traffic light on the south side of the intersection, but there is a "walk" and "don't walk" signal for southbound pedestrian traffic in the crosswalk on the southeast corner of the intersection, and there is also a "green arrow" signal for right turns for northbound traffic.

The crosswalk from the northeast corner to the southeast corner of the intersection is approximately 12 feet in width. At the time of the accident, plaintiff, who was approximately 75 years of age, was with her sister on the northeast corner of the intersection and intended to and did commence to cross the east crosswalk in a southerly direction with the intention of taking a bus to her home, the bus stop being on the east side of the southeast corner of the intersection, the buses facing in a northerly direction at that location and being next to the east curb of the street. Plaintiff and her sister had come from south Omaha and had been to a cafeteria on the north side of Douglas Street for dinner and had their transfers for their bus ride to their respective homes. At or shortly before the time of the accident in question, the defendant was driving his automobile north on 15th Street and stopped his automobile in the second lane from the curb behind another

car which was also stopped for the red light facing them. When the traffic light facing them changed from red to green, the car ahead of him moved out and made a right turn onto Douglas Street and Mitchell made a right turn behind that car. Before turning, he testified he observed the crosswalk area but saw no one while turning and saw people standing on the northeast corner of the intersection but saw no one in the crosswalk. At the time he crossed the crosswalk the speed of his vehicle was about 4 to 5 miles per hour. As he was moving out of the intersection he heard the sound of something bumping his car on the left side at the rear. He immediately stopped his automobile; and while the testimony was conflicting, it appears that only the left rear portion of the car was still in the crosswalk. A passenger in his automobile, one Willie Williams, confirmed the testimony of the defendant and in addition testified that he saw the plaintiff walk into the side of the defendant's car, at which time all of the defendant's car was east of the crosswalk except the rear quarter panel. Terry R. Campbell, a witness for the plaintiff, was a policeman who investigated the accident. He testified that he had interviewed the plaintiff at the hospital following the accident and that he had asked her what had happened. He was asked as to what she told him, and he replied, "The pedestrian, Holly, stated that she saw her bus at the bus stop, and it was necessary for her to catch that particular bus to avoid a 45-minute wait. She stated that she crossed the street and, 'made a run for it,' to avoid cars that were coming, but one car hit her." Plaintiff's sister, Alma Logsdon, who was with the plaintiff at the northeast corner of the intersection prior to the plaintiff starting to cross the street, was asked: "Q. How was it that you knew that she saw the bus? Did she tell you that as she was crossing the street?" Her answer was: "A. Well, I think when the bus was standing there when we started to cross the street she said, 'Well, there's

the bus,' and away she went." While plaintiff testified that she had a green light in her favor as she stepped off the curb (although there is no green light facing her in crossing from the north side of the street going south in the crosswalk), and that she had a green "walk" sign in her favor before she entered the crosswalk, there is also evidence in the record to the effect that in traversing the street she looked backward to look at her sister who was a slower walker than she was, and also looked west on Douglas Street to observe approaching traffic. She was asked: "Q. Did you ever see Mr. Mitchell's vehicle before the accident? A. Did I ever see— Q. Mr. Mitchell's vehicle? A. No." She also admitted that there was no obstruction between her and defendant's vehicle. There is also evidence in the record from which the jury could conclude that plaintiff, as she was crossing the street, was looking down into her purse to get her fare or transfer. She was asked: "Q. Is it possible that just before you came into contact with the Mitchell car you might have been looking down into your purse trying to get change for your bus or trying to get a transfer just before you came into contact with the Mitchell car, is that possible? A. I don't think so. I usually have my bus fare ready or transfer. Q. Do you remember which hand you were carrying your purse and your shopping bag in? Did you have a shopping bag, too? A. Yes, I think I did. Left hand. Q. And you had both of them in the left hand, didn't you? Your purse and shopping bag? A. Right. I did when I was getting my transfer—when I had to get my transfer. Q. Wasn't that while you were crossing the street? A. No. Q. When was it? A. When I got to the corner. . . . Q. All right. Didn't you have to look down into your purse when you went to get the bus fare or the transfer? A. Well, I *usually* had it in my hand ready. Q. But if it was in your purse then you'd have to look down, would you not? A. Yeah, but I'd usually have it ready when I'm

going to make that transaction." (Emphasis supplied.)

Plaintiff's sister, Alma Logsdon, was asked on cross-examination: "Q. Did your sister have a purse with her? A. Yes, sir. Q. And did the contents of that purse spill out on the street? A. Some of it did. Q. As a matter of fact, you were the one who kind of helped pick up the contents of the purse, aren't you? A. Yes, sir. Q. And did you pick up the purse itself, also? A. Yes, sir. Q. And it was open, was it not? A. Yes."

There is also testimony in the record to the effect that as plaintiff crossed the street, she was walking at a rapid pace, but she denied telling the police officer that she had crossed the street and "made a run for it" to avoid cars that were coming.

On the basis of the above evidence, including admissions against interest introduced during the trial, the trial court submitted the questions of the negligence of the defendant, the contributory negligence of the plaintiff, and the comparison thereof to the jury, which, as previously stated, found for the defendant.

Our review of the record convinces us that there were numerous disputed questions of fact involved in this case touching on both the issue of the defendant's negligence and the plaintiff's contributory negligence, and that the court properly submitted the issue to the jury. The facts pointing in either direction were not so clear cut as to require the court to make a finding of liability and direct a verdict as to the negligence of either party. The law is well established in this state that where reasonable minds may draw different conclusions and inferences from the evidence as to the negligence of the defendant and the contributory negligence of the plaintiff and the degree thereof when one is compared with the other, the issues must be submitted to the jury. *Sullivan v. Geo. A. Hormel and Co.,* 208 Neb. 262, 303 N.W.2d 476 (1981); *Ybarra v. Wassenmiller,* 206 Neb.

164, 291 N.W.2d 725 (1980); *Treffer v. Seevers,* 195 Neb. 114, 237 N.W.2d 114 (1975); *Middleton v. Nichols,* 178 Neb. 282, 132 N.W.2d 882 (1965).

Counsel for plaintiff argues, however, that under the statutes of Nebraska in effect at the time of the accident, the plaintiff, who he contends was a pedestrian within a crosswalk, had the right-of-way over the defendant motorist who was required to yield to her, and, also, that since the plaintiff was a pedestrian facing a "walk" signal, it was required that she be given the right-of-way by defendant even though the signal may have changed during her crossing of the street. See Neb. Rev. Stat. §§ 39-614 and 39-615 (Reissue 1978). Plaintiff further contends that the court in its instructions failed to instruct on plaintiff's right-of-way as a pedestrian while crossing the street in the crosswalk, and, further, that the court erred in its instructions in telling the jury that the right of a pedestrian to the lawful use of the street or highway is in all respects equal to that of a person driving an automobile. On the contrary, the law in this state is well established that a pedestrian crossing at a regular crosswalk with the right-of-way has a right, until he has notice or knowledge to the contrary, to assume that others will respect his right-of-way. *Zawada v. Anderson,* 181 Neb. 467, 149 N.W.2d 329 (1967); *Miller v. Moeller,* 183 Neb. 508, 162 N.W.2d 224 (1968); *Dunlap v. Coleman,* 201 Neb. 148, 266 N.W.2d 527 (1978).

However, the law is also well settled that even though a statute grants the right-of-way to a pedestrian crossing a street in the crosswalk, it does not excuse contributory negligence on his part. *Farag v. Weldon,* 163 Neb. 544, 80 N.W.2d 568 (1957); *Laurinat v. Giery,* 157 Neb. 681, 61 N.W.2d 251 (1953); *Corbitt v. Omaha Transit Co.,* 162 Neb. 598, 77 N.W.2d 144 (1956); *Laux v. Robinson,* 195 Neb. 601, 239 N.W.2d 786 (1976).

Plaintiff specifically complains of instruction Nos. 13 and 13a given to the jury by the court, and con-

tends that such instructions were inaccurate and misled the jury. Instruction No. 13 given by the court is as follows: "The right of a pedestrian to the lawful use of a street or highway is in all respects equal to that of a person driving an automobile, but each person or vehicle on the street or highway must so exercise his right to use it as not to injure others and must exercise such caution as an ordinarily prudent person would exercise under like circumstances. In other words, the rights of pedestrians and motor vehicles on a public street or highway are equal and each is obliged to act as a reasonably prudent person would with respect to the movements of the other. A person having the right of way is nevertheless obligated to exercise ordinary care for his own safety and to avoid an accident." Instruction No. 13a given by the court is as follows: "If a pedestrian is lawfully in a crosswalk, such a pedestrian is not required to anticipate that another may violate such pedestrian's right-of-way, and such a pedestrian has a right to assume that her right-of-way will be respected by such a vehicle until such time as she is given actual knowledge of facts which indicate that the driver intends to violate her right-of-way.

"It is the duty of a driver of a motor vehicle and of a pedestrian to keep a proper lookout in the direction of anticipated danger. The duty to keep a lookout implies a duty to see that which is in view and to act with due care in accordance with the circumstances."

Also, in instruction No. 14, the jury was given verbatim the language of the statutes previously referred to.

We believe that the instructions given by the court were correct and represented an amalgamation of the various statutes and case law previously set out in this opinion. There is no showing in the record that the instructions given in any way misled or confused the jury. We have held that instructions

should be considered together, and if, when considered as a whole, they correctly state the law, error cannot be predicated thereon. *Zawada v. Anderson, supra.* We have also held that where instructions are not inconsistent or contradictory but, considered together, correctly state the law, the judgment will not be reversed because one does not state the entire law on the subject, unless it appears that the jury was misled. *Schram v. Lowden,* 144 Neb. 851, 15 N.W.2d 42 (1944). As stated above, we believe that the instructions given by the court were correct, and there is no showing in the record that the jury was in any way misled by such instructions.

While the basis on which the jury rendered its verdict for the defendant does not appear from the record, i.e., whether because of lack of negligence of the defendant or more than slight contributory negligence of the plaintiff, it is presumed in a jury trial that controverted facts were decided by the jury in favor of the successful party, and its finding based on conflicting evidence will not be disturbed unless clearly wrong. *Nisi v. Checker Cab Co.,* 171 Neb. 49, 105 N.W.2d 523 (1960).

Plaintiff has also assigned as error failure of the court to give the jury the instructions requested by her. We have examined the requested instructions and believe that they were substantially given in the instructions actually given the jury by the court. This assignment of error is without merit.

In view of what we have stated above, we conclude that the judgment entered by the trial court was correct; and no reversible error appearing in the record, such judgment must be affirmed.

AFFIRMED.