EMERY L. BASHUS, APPELLANT, V. MARGIE A. TURNER AND
ROBERT I. TURNER, APPELLEES.

352 N.W.2d 161

Filed July 20, 1984.   No. 83-420.

James A. Cada of Bailey, Polsky, Cada & Todd, for appellant.

Alan L. Plessman, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

In this appeal from a $458 judgment entered in his favor pursuant to a jury verdict, plaintiff-appellant, Emery L. Bashus, claims the trial court erred in its jury instructions and in failing to grant a new trial because of the insufficiency of the verdict. We affirm.

On March 6, 1980, in daylight hours, Emery Bashus was walking north on the west side of 9th Street in Lincoln, Nebraska. As he crossed G Street at its intersection with 9th Street, he was struck while in the crosswalk by an automobile operated by defendant-appellee Margie A. Turner, who was turning south from G Street into 9th Street. Bashus testified that when he was about 30 feet from the intersection, he noticed Turner's vehicle slowly approaching the intersection from the west on G Street. Assuming she would stop for the stop sign that protected the intersection, he proceeded across the intersection. Bashus

testified:

Q And did you continue on northbound along 9th?

A Yes, I did.

Q Would you relate what occurred from that point on?

A As I left the curb and had started across, I had already — I was already off the curb and had started across. The car wasn't going to stop, that was coming.

Q Did you — When did you know or decide that it wasn't going to stop?

A When it was coming at me.

Q Okay. How far away, if you recall, was it at that time?

A I can't — At that time, it was just — coming at me, it couldn't have been more than three feet, or so.

Q Okay. Did you think, prior to that time, that it was going to stop?

A Yes, I did.

Q Did it appear that it was slowing down for a stop?

A It was slowing down.

John Rallis, the investigating officer, testified:

A I asked him [Bashus] how the accident had occurred and what he had been doing prior to the accident, and he stated that he was walking north on the sidewalk; as he approached G Street he stepped off the curb and he observed a vehicle that was eastbound on G Street and he observed the vehicle wasn't going to stop, so he began to run and he jumped prior to being struck by the vehicle.

When Bashus saw that he would be struck by the car, he leaped onto the hood of Turner's vehicle to avoid being run over. Bashus was taken to the hospital, where he was diagnosed as having an abrasion of the right leg and a sprained right ankle. He did not work that day but returned to work the next.

Turner said she did not see Bashus until she was upon him. Her view to her right was obstructed by cars parked along the south side of G Street; further, her attention was directed to the southbound traffic on 9th Street. She admitted that she drove her car slowly onto the crosswalk without stopping. The impact was 11 feet from the G Street south curb.

In September of 1980 Bashus contacted a psychiatrist, complaining of a lack of self-confidence, which included indecisive-

ness, problems with sleep, constant reliving of the accident, and fear of crossing intersections. The psychiatrist testified that Bashus suffered from post-traumatic stress disorder which had eased in its severity by the time of trial, but which was likely to last throughout the rest of Bashus' life.

Bashus incurred medical expenses of $637.13, $182.40 for his physical injuries and $454.73 for his psychiatric treatment, including drugs. He also claims a $1,079.53 wage loss. There was conflict in the evidence as to whether all of these items resulted from the accident.

> [T]he law in this state is well established that a pedestrian crossing at a regular crosswalk with the right-of-way has a right, until he has notice or knowledge to the contrary, to assume that others will respect his right-of-way. . . .
>
> However, the law is also well settled that even though a statute grants the right-of-way to a pedestrian crossing a street in the crosswalk, it does not excuse contributory negligence on his part.

*Holly v. Mitchell*, 213 Neb. 203, 210, 328 N.W.2d 750, 754 (1982). See, also, *Farag v. Weldon*, 163 Neb. 544, 80 N.W.2d 568 (1957).

In connection with the jury instructions, Bashus urges that the trial court erred in (1) giving instruction No. 11, (2) refusing to give Bashus' proposed instruction No. 2, rather than its instructions Nos. 7 and 10, and (3) instructing the jury concerning comparative negligence.

Instruction No. 11 reads: "It is the duty of a pedestrian who is in a place of safety, and who sees or could have seen the approach of a moving vehicle in close proximity to him, not to move suddenly from his place of safety into the path of such vehicle."

The authority for this instruction has a long history in our law. See, *Cuevas v. Yellow Cab & Baggage Co.*, 141 Neb. 662, 4 N.W.2d 790 (1942); *Corbitt v. Omaha Transit Co.*, 162 Neb. 598, 77 N.W.2d 144 (1956); *Farag v. Weldon, supra; Gerhardt v. McChesney*, 210 Neb. 351, 314 N.W.2d 258 (1982).

Bashus takes issue with this instruction on two grounds: (1) There is no evidence of sudden movement and (2) he never moved from a place of safety, since a crosswalk is such per se.

Bashus argues that *Dunlap v. Coleman*, 201 Neb. 148, 266 N.W.2d 527 (1978), is dispositive. It was a pedestrian-intersection accident where an instruction similar to No. 11 was held as error. That case is distinguishable on the facts—the pedestrian was struck from the rear, and the court said that the pedestrian had no duty to maintain a lookout to the rear to avoid a charge of negligence.

*Travinsky v. Omaha & C. B. Street R. Co.*, 137 Neb. 168, 288 N.W. 512 (1939), involved a pedestrian who had stopped in an intersection close to the path of a moving streetcar. He "made a sudden dash" in front of the streetcar. The court said that when the pedestrian was stopped, he was in a place of safety, and, "The negligence does not arise from the single circumstance of whether the pedestrian looks or does not look. The determining element in this type of case is the sudden movement into the path of the vehicle followed by almost instantaneous collision." *Id.* at 173, 288 N.W. at 514-15.

While an official designation of a crosswalk contributes to the safety of pedestrians, the place of safety contemplated by instruction No. 11 is any place established by the evidence that is occupied by the pedestrian just prior to sudden movement where he is then safe from injury, considering the facts and circumstances in each case then existing. It is a jury question. There was evidence presented to the jury on all issues covered by instruction No. 11. Bashus' assignment with respect to instruction No. 11 fails.

Bashus next contends that his requested instruction No. 2 should have been given instead of the court's instructions Nos. 7 and 10. His proposed instruction No. 2 reads: "A pedestrian crossing at a regular crosswalk and having the right-of-way has a right to assume that his right-of-way will be respected until he has notice or knowledge to the contrary."

The trial court's instructions Nos. 7 and 10 were as follows:

[7] A person may assume that every other person will use reasonable care and will obey the law until the contrary reasonably appears.

[10] The right of a pedestrian to the lawful use of a street or highway is in all respects equal to that of a person driving an automobile, but each person or vehicle on the

street or highway must so exercise his right to use it as not to injure others and must exercise such caution as an ordinarily prudent person would exercise under like circumstances. In other words, the rights of pedestrians and motor vehicles on a public street or highway are equal and each is obliged to act as a reasonably prudent person would with respect to the movements of the other. A person having the right of way is nevertheless obligated to exercise ordinary care for his own safety and to avoid an accident.

Bashus' sole problem with instruction No. 7 is that he believes it is not specific enough. Jury instructions should be considered as a whole, and the meaning of an instruction or instructions, when taken as a whole, must be considered, and not just the phraseology of a particular part. *Keating v. Klemish*, 214 Neb. 458, 334 N.W.2d 440 (1983). From a full review of all instructions, we conclude there is no merit in this claimed error.

Concerning instruction No. 10, this court, in *Holly v. Mitchell*, 213 Neb. 203, 328 N.W.2d 750 (1982), an automobile-pedestrian accident occurring in a crosswalk protected by a traffic signal, specifically approved an instruction identical to the trial court's instruction No. 10.

There was no error in instructions Nos. 7, 10, and 11 as given.

Next, Bashus contends that the trial court erred in instructing on comparative negligence, Neb. Rev. Stat. § 25-1151 (Reissue 1979), claiming that Turner did not specifically plead that Bashus' slight negligence was sufficient to reduce or mitigate damages.

Turner's answer alleges that "the subject accident and any injuries or damages sustained by plaintiff . . . are the direct and proximate result of his own negligence in failing to maintain a proper lookout and in failing to yield the right-of-way . . . sufficient . . . to bar his recovery."

The purpose of pleadings is to frame the issues upon which a cause is to be tried and advise the adversary as to what he must meet. *Moore v. Puget Sound Plywood*, 214 Neb. 14, 332 N.W.2d 212 (1983). Pleading Bashus' contributory negligence in the fashion employed by Turner advised Bashus that his contributory negligence was at issue, and the comparative negli-

gence instruction was proper.

In his final assignment Bashus contends it was error for the trial court to deny his motion for new trial, because the damage award was clearly inadequate. The jury returned a verdict of $458. Bashus contends that the undisputed evidence shows that he incurred $607.13, which the record shows to be $637.13, in reasonable and necessary medical expenses. As pointed out earlier, of these medical expenses only $182.40 was incurred as a result of treating Bashus' physical injuries. The rest were related to his psychiatric treatment. Bashus also contends that he lost wages in the amount of $1,079.53. The evidence at trial shows he returned to work on the day following the accident, after missing the previous 8-hour workday because of the accident. He was paid at the hourly rate of $8.27. The majority of the other workdays lost were more than 9 months later.

A verdict will not be set aside as inadequate unless so clearly against the weight and reasonableness of the evidence and so disproportionate to the injury proved as to indicate that it was the result of passion, prejudice, mistake, or some other means not apparent in the record, or that the jury disregarded the evidence or rules of law. *K & R, Inc. v. Crete Storage Corp.*, 194 Neb. 138, 231 N.W.2d 110 (1975); *Cooper v. Hastert*, 175 Neb. 836, 124 N.W.2d 387 (1963). This is not such a case.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I regret that I must respectfully dissent from the majority opinion in this case. While it may very well be that the injuries are not as serious as Mr. Bashus would have us believe and, therefore, the verdict of the jury is correct, nevertheless, I have difficulty agreeing with a proposition of law to the effect that when the driver of an automobile, who admittedly does not see a pedestrian, strikes the pedestrian while the pedestrian is in a marked crosswalk, the pedestrian is somehow guilty of negligence because he went from a place of safety to a place of danger. It would appear that this case may be misunderstood for the proposition that every pedestrian leaves the sidewalk at his own risk. I do not believe that to be the law in this jurisdiction. See *Dunlap v. Coleman*, 201 Neb. 148, 266 N.W.2d 527 (1978).

The majority relies upon testimony to the effect that Mr.

Bashus, after he observed that the Turner vehicle was not going to stop, began to run, and jumped prior to being struck by the vehicle. I do not read the testimony to mean that Bashus ran in front of the vehicle; rather, I read that to mean that when he realized the Turner vehicle was not going to stop, he ran to what he hoped would be a place of safety, but was not able to get away from the Turner vehicle. I do not believe that such action on the part of a pedestrian constitutes an act which would have justified the trial court in giving instruction No. 11. For that reason I would have reversed and remanded.

WHITE, J., joins in this dissent.