JAMES R. DOWD, APPELLANT, AND ANR FREIGHT SYSTEM, INC., A FOREIGN CORPORATION, APPELLEE, V. RICHARD W. CONROY, APPELLEE.

491 N.W.2d 375

Filed July 28, 1992.   No. A-90-371.

Michael G. Goodman, of Cannon, Goodman, O'Brien & Grant, P.C., for appellant.

Gary J. Nedved, of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., for appellee Conroy.

CONNOLLY, MILLER-LERMAN, and WRIGHT, Judges.

CONNOLLY, Judge.

This appeal arises from an action in negligence based on an automobile-truck collision. The defendant, Richard W.

Conroy, admitted liability at the pretrial conference, and the matter was tried on the issue of damages. The jury returned a verdict for the defendant. The plaintiff James R. Dowd appeals. We affirm.

## FACTS

Although the defendant admitted liability, a factual background will be helpful for an understanding of the damage issues. Dowd was an over-the-road driver for ANR Freight Systems, Inc. The accident giving rise to this suit occurred around 6:30 a.m. on October 23, 1987. At the time of the accident, Dowd was driving a twin-trailer semi eastbound on Highway 2 in Lincoln, Nebraska.

Highway 2 is a four-lane highway intersected by Old Cheney Road. The intersection of the two roads is controlled by stop signs placed on Old Cheney Road.

Conroy's automobile was proceeding south on Old Cheney Road. Conroy stopped at the stop sign; he first checked the eastbound lanes for traffic and then checked the westbound lanes. Conroy waited for the westbound traffic to pass by in front of him and proceeded into the intersection without looking to the eastbound traffic again. He proceeded across the two lanes of westbound traffic on Highway 2, crossed the center lane into the first lane of eastbound traffic at 10 to 15 miles per hour, and there collided with the left side of Dowd's tractor.

Dowd testified that the front of Conroy's automobile initially collided with the left front wheel of the tractor. The impact to the front wheel tore loose a cup used to lubricate the wheel bearings, and oil was leaking from the front wheel after the impact. Dowd's testimony was that the automobile was spun around by the impact and that the automobile then hit the side of the truck. The automobile sheared off the step to the cab of the truck and damaged the left-side fuel tank. The hood and front bumper of the defendant's automobile were torn loose by the impact. Dowd's testimony was that at some point, a wheel on the tractor went up and over the body of Conroy's automobile.

Conroy's testimony conflicted with Dowd's, since Conroy

testified that his automobile struck the side of the semi "just behind the cab in the fuel tank." He could not contradict Dowd's assertion that the front wheels or the rear drive wheels on the tractor went up and over the front of his automobile. He also testified that he observed that a seal was missing from the left front wheel of the tractor and that the seal was leaking oil.

Dowd testified that even though he was wearing a safety belt, he was thrown around inside the cab of the tractor. He testified that the tractor lurched to one side upon impact, as if it were about to topple over. This lurching was caused when the wheels of the truck rolled over the front of the automobile. Dowd testified that when the truck lurched to his right, his knees also moved to his right; that his left knee hit the dash or the steering column; and that his right knee hit the padded motor box. After rolling over the automobile, the truck moved to the left, and Dowd's head then struck the door to his left. Dowd testified that he felt sharp pain in his left knee after it hit the interior of the cab.

Dowd was transported to a hospital, and he returned to Kansas City, Missouri, later that evening. Physical therapy failed to reduce swelling in Dowd's knee, and Dowd visited an orthopedic surgeon, Dr. Robert D. Littlejohn.

Dr. Littlejohn performed arthroscopic surgery on Dowd's left knee on December 9, 1987. Dowd was unable to work from October 23, 1987, to February 8, 1988. Dowd's expenses for therapy were $8,195.06. Dowd presented evidence of $12,929.07 in lost wages.

Before the injury in the case at bar, Dowd had sustained three separate injuries to his left knee. In 1965, Dowd had his kneecap removed to remedy roughening of the articular cartilage, or chondromalacia, of the kneecap.

In 1980, Dowd fell through some ice and tore the lateral meniscus in his left knee. The meniscus is a type of cartilage that separates the tibia and femur and acts as a cushion between those two bones. Surgery was performed in 1980, and Dowd's lateral meniscus was partially removed. The surgical wound became infected.

On November 12, 1986, Dowd's knee "just gave away" as he was walking, and it became swollen. Dr. Littlejohn testified

that this trauma could have been caused by a tear in the medial meniscus, by chondromalacia, or by arthritis. Dr. Littlejohn also testified that he had performed diagnostic arthroscopic surgery on November 24, 1986, and had discovered extensive articular adhesions which had been formed long before the knee "gave away." However, Dr. Littlejohn did not perform operative arthroscopy on November 24. Dowd was unable to work from November 12, 1986, to January 12, 1987. Dowd also testified that his knee had been subject to minor swelling and pain before the accident on October 23, 1987.

At the end of all the evidence, Dowd moved for directed verdict on the issues of medical expenses and lost wages. This motion was overruled.

During his closing argument, Dowd's counsel suggested to the jury that Dowd had a life expectancy of 24 years; counsel then requested that the jury return a verdict of $24,000 for past and future suffering, or $1,000 per year, or $3 per day. Defense counsel moved for a mistrial, which motion was overruled; the court then admonished the jury to disregard the per diem approach to assessing damages.

On March 14, 1990, the jury, in a 10 to 2 verdict, found for the defendant. Dowd moved for a new trial, which motion was overruled. Dowd now appeals to this court.

## ASSIGNMENTS OF ERROR

On appeal, Dowd assigns the following errors: (1) The district court erred in overruling Dowd's motion for a partial directed verdict for medical expenses and lost wages, (2) the district court erred in admonishing the jury during Dowd's closing argument, and (3) the district court erred in overruling Dowd's motion for a new trial because the verdict was inadequate as a matter of law and was the result of passion, prejudice, mistake, or some other reason not apparent in the record.

## PARTIAL DIRECTED VERDICT

In his first assignment of error, Dowd contends the court erred by not sustaining his motion for a partial directed verdict on medical expenses and lost wages.

A trial court should direct a verdict as a matter of law only

when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. The party against whom the verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the judgment is made, the case may not be decided as a matter of law. *Baker v. St. Paul Fire & Marine Ins. Co.*, 240 Neb. 14, 480 N.W.2d 192 (1992).

The testimony in this case simply does not warrant a directed verdict for Dowd on his medical expenses and lost wages. The facts surrounding Dowd's injury are subject to multiple explanations, such that a reasonable mind cannot draw but one inference from them.

Dr. Littlejohn testified that during his treatment of Dowd's knee on December 9, 1987, he surgically removed extensive scar adhesions. These adhesions were so extensive that when the doctor had performed diagnostic arthroscopic surgery the previous year, he could not see that part of Dowd's lateral meniscus had been surgically removed.

Dr. Littlejohn testified that scar adhesions generally form within weeks to months after a trauma. However, Dr. Littlejohn also testified that he had not removed the scar adhesions during the arthroscopic surgery conducted in November 1986. Therefore, the scar adhesions that appeared during the arthroscopic surgery performed by Dr. Littlejohn on December 9, 1987, could have formed over a period of years or during the few months between the October 23 accident and the surgery on December 9.

Moreover, Dr. Littlejohn testified that his initial diagnosis of Dowd's October 1987 injury was that it was a bruise. He testified that his postoperative diagnosis was consistent with his initial diagnosis of a contusion, or bruise, and that there was no evidence of fresh tearing. In fact, the doctor did not find evidence of a recent injury, and he stated that most of the adhesions were from preexisting injuries.

The testimony concerning Dowd's injury does not admit only one inference. Sufficient evidence was adduced concerning Dowd's previous injuries to warrant the inference

that preexisting scar adhesions and the removal of part of Dowd's lateral meniscus caused Dowd's knee to be inherently unstable and that Dowd's knee would be subject to swelling, stiffness, and disability even in the absence of an accident.

Accordingly, there is no merit in Dowd's contention that he was entitled to judgment as a matter of law for his medical expenses and lost wages.

## JURY ADMONISHMENT

Dowd argues that the court erred by admonishing the jury in open court to disregard his counsel's formula for assessing damages for pain and suffering, thereby prejudicing Dowd's case.

Conduct of final argument is within the discretion of the trial court, and a trial court's ruling regarding final argument will not be disturbed absent abuse of that discretion. *Sundeen v. Lehenbauer*, 229 Neb. 727, 428 N.W.2d 629 (1988); *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984).

The court instructed the jury:

> In the closing argument Plaintiff's counsel, Mr. Goodman, ah, referred to a total figure that he was suggesting for pain and suffering. And added to that, that that only amounted to a certain amount of dollars per day. You are cautioned and admonished and instructed that you are not to — that you are to disregard that reference to an amount per day and you are not to utilize that approach to arriving at damages. The Instructions will be adequate to assist you in arriving at whatever damages, if any, should be awarded in this case.

Dowd argues that a per diem argument is permissible under Nebraska law so long as the jury is informed that it may count backward. Dowd relies on *Baylor v. Tyrrell*, 177 Neb. 812, 819, 131 N.W.2d 393, 399 (1964), in which the court stated: "It is the arbitrary multiplication forward to reach a false lump sum that has been criticized, not the division back of a lump sum properly suggested."

In *Baylor*, counsel broke the evidence down into six different areas: (1) pain and suffering at the time of the accident, (2) the 19-day period of hospitalization, (3) the 17 months after

hospitalization until the time of trial, (4) future disability and pain, (5) mental suffering and anxiety, and (6) loss of earning capacity. He then suggested a flat amount for the jury to consider as to some of the above items. He suggested $2,500 for the plaintiff's experience and pain at the scene of the accident. He ascribed $3,800 as the proper value for the plaintiff's 19-day hospitalization. The defendant asserted that it was error to allow counsel to break damages into fragments because this constituted a per diem argument. The Supreme Court stated:

> Heretofore, there has been no rule in Nebraska forbidding counsel, in final argument, from equating pain and suffering to time segments within life expectancy, suggesting monetary values for them, multiplying them to reach a final amount, and illustrating such an argument on a blackboard or chart. However, we refrain from passing on this question as it is not presented in this case.

*Baylor*, 177 Neb. at 817, 131 N.W.2d at 398.

The Supreme Court held that counsel did not mention or make use of any money figure arbitrarily selected as representing the value of any minute, day, or week and then multiply it by a formula. Rather, the court found that counsel argued: "(1) The different periods of time the plaintiff had been and would be affected, and (2) the lump sum dollar amount suggested for the loss." *Id*. at 818, 131 N.W.2d at 398. The court reasoned that this was permissible because "[i]t is not the declaration of or the use of a lump sum figure for the different injuries or the periods they are endured that is condemned, but the use of a misleading and nonevidence supported mathematical formula method to reach the lump sum that has been condemned." *Id*.

Therefore, *Baylor* holds that counsel may suggest a lump sum to the jury where "real differing periods of disability, as to quality and time of duration, would warrant an inference of different amounts for each." *Id*. at 818, 131 N.W.2d at 398. See, also, *Yount v. Seager*, 181 Neb. 665, 150 N.W.2d 245 (1967) (relying on *Baylor* to allow counsel to state amounts of recovery for different elements of damage in opening statement to jury if such amounts bear real relation to what party expects to prove).

The trial court, however, relied on its belief that Dowd's

counsel made a per diem argument and that such calculation was not allowed.

We hold that counsel used a per diem argument. *Baylor* states that multiplication of an arbitrary figure to reach a lump sum constitutes a per diem argument. In the case at bar, counsel stated a lump sum and then divided it to reach an arbitrary figure. There is no real difference between dividing a lump sum to reach an arbitrary figure and multiplying an arbitrary figure to reach a lump sum. Moreover, counsel did not assign lump sums to different periods of pain and suffering. Therefore, counsel's mathematical formula is the equivalent of a per diem argument. See *Higgins v. Hermes*, 89 N.M. 379, 552 P.2d 1227 (N.M. App. 1976), *cert. denied* 90 N.M. 8, 558 P.2d 620.

However, there is no rule in Nebraska forbidding the practice counsel employed in this case. The only Nebraska case on point is *Baylor*, in which it was not necessary to reach the issue of the per diem argument to dispose of the case. A case is not authority for any point not necessary to be passed on to decide the case or not specifically raised as an issue addressed by the court. *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989). Therefore, the trial court erred in believing that a per diem argument was improper under Nebraska law.

Although the court's interpretation of the law was in error, we hold that the court's admonishment to the jury was not an abuse of discretion. Judicial abuse of discretion does not denote or imply improper motive, bad faith, or intentional wrong by a judge, but requires the reasons or rulings of the trial judge to be clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in a matter submitted for disposition through the judicial system. *Wachtel v. Beer*, 229 Neb. 392, 427 N.W.2d 56 (1988). See, also, *Brooke v. Brooke*, 234 Neb. 968, 453 N.W.2d 438 (1990).

In the case at bar, even if Dowd was prevented from presenting a per diem argument, he was not unfairly deprived of a substantial right because he was not prejudiced. The per diem argument only went to the item of general damages included in pain and suffering. However, the jury awarded Dowd no damages at all, not even the special damages of

medical expenses and lost wages. Although we cannot say what motivated the jury in its decision, the jury could conclude, based on the evidence, that all Dowd's damages were directly attributable to preexisting injuries. We cannot say Dowd was unfairly deprived of a substantial right because Dowd has not met his burden of showing how he was prejudiced by the court's ruling. On appeal, the party asserting an abuse of discretion has the burden of proving that claim. *Diplomat Inn, Inc. v. Weindorf*, 206 Neb. 565, 293 N.W.2d 861 (1980).

Accordingly, this assignment of error is without merit.

## NEW TRIAL FOR INADEQUATE VERDICT

Dowd contends that the jury verdict, which awarded no damages, was inadequate and that the district court ought to have sustained a motion for new trial on this ground.

The standard of review of an order granting a new trial is whether the trial court abused its discretion. A motion for new trial should be granted only where there is error prejudicial to the rights of the unsuccessful party. *Patterson v. Swarr, May, Smith & Anderson*, 238 Neb. 911, 473 N.W.2d 94 (1991).

Generally, where there is a conflict concerning the extent to which a plaintiff's complaints were caused by injuries suffered at the time of a collision, the question is ordinarily for the jury under proper instructions. *Abbott v. Northwestern Bell Tel. Co.*, 197 Neb. 11, 246 N.W.2d 647 (1976); *Brewer v. Case*, 192 Neb. 538, 222 N.W.2d 823 (1974). See, also, *Bashus v. Turner*, 218 Neb. 17, 352 N.W.2d 161 (1984); *Palma v. Barta*, 203 Neb. 459, 279 N.W.2d 130 (1979).

In the case at bar, there was a conflict in the testimony as to whether Dowd suffered injury which was proximately caused by the defendant's negligence or whether his injury was attributable to preexisting scar tissue. Dr. Littlejohn testified that Dowd's knee was predisposed to pain, stiffness, and disability by two surgeries. Dowd testified that in 1986, his left knee "just gave away" as he was walking, and Dr. Littlejohn testified that this was caused either by a torn meniscal cartilage or by some other form of internal derangement of the knee.

Dr. Littlejohn also testified that he observed extensive articular adhesions during the arthroscopy he performed in

November 1986. Dr. Littlejohn could not testify as to what caused these adhesions.

There was also a conflict on whether the accident took place in the manner described by Dowd's testimony. Dowd testified that one of the wheels of the truck must have rolled over the body of Conroy's automobile. However, Conroy testified that his automobile struck the tractor behind the left front wheel, in the area of the fuel tank.

The cumulative effect of this conflicting testimony sufficiently supports a jury's finding that Dowd's damages were not proximately caused by Conroy's negligence, but were the result of chronic knee ailments stemming back to the removal of Dowd's patella and part of his lateral meniscus.

"A jury verdict may not be set aside unless clearly wrong, and it is sufficient if there is any evidence presented to the jury upon which it could find for the successful party." *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 307, 436 N.W.2d 151, 164 (1989).

A verdict will not be set aside as inadequate unless so clearly against the weight and reasonableness of the evidence and so disproportionate to the injury proved as to indicate that the verdict was the result of passion, prejudice, mistake, or some other means not apparent in the record, or that the jury disregarded the evidence or rules of law. *Bashus v. Turner, supra.*

In the case at bar, the jury verdict was not clearly against the weight and reasonableness of the evidence. Since there was no prejudicial error, it was not an abuse of discretion for the trial court to overrule Dowd's motion for new trial. Dowd's assignment of error is without merit.

The judgment of the district court is affirmed.

AFFIRMED.