DONNA SCHNEIDER, APPELLANT, V.
LAURO CHAVEZ-MUNOZ, APPELLEE.
616 N.W.2d 46

Filed August 8, 2000. No. A-99-1028.

Michael W. Meister, of Meister & Segrist, for appellant.

Steven W. Olsen, of Simmons, Olsen, Ediger, Selzer, Ferguson & Carney, P.C., for appellee.

Irwin, Chief Judge, and Sievers and Moore, Judges.

Moore, Judge.

## I. INTRODUCTION

This appeal arises from a suit filed in the district court for Scotts Bluff County, Nebraska, by the appellant, Donna Schneider, against the appellee, Lauro Chavez-Munoz (Chavez), for injuries from an accident occurring on June 19, 1994. Schneider claimed that she suffered a "closed head, mild traumatic brain injury and a cervical and lumbar strain" and that she incurred $7,691.58 in medical expenses. Chavez claimed that Schneider was contributorily negligent. Schneider filed a motion for summary judgment on the issue of liability, which was sustained by the district court. At the close of the jury trial, Schneider moved for a partial directed verdict, which was over-

ruled by the court. The case was submitted to the jury, which returned a $0 verdict. Schneider filed a motion for new trial, which was overruled by the court. This appeal follows.

## II. BACKGROUND

On June 19, 1994, Schneider was stopped in traffic at a flashing red light in Gering, Nebraska. Chavez' car collided with the rear of Schneider's car. Schneider alleged that she stopped her car just before the crosswalk and that the force of the collision propelled her vehicle into the intersection. Schneider indicated that she had her seatbelt on and that as a result of the collision, she lost two fingernails, which "were bleeding." She indicated that she did not know if any part of her body besides her hand struck anything, that she was not dizzy and did not believe she was unconscious after the accident, that she felt cold and was trembling but not nauseous, and that she did not have any eye problems after the accident.

Schneider recalled that a friend from church took her to sit in the passenger side of Schneider's car and asked her how she felt. She remembered telling him that she thought that she was "okay." She stated that she was shaken up, but that it would have been normal for her to think that she was "okay." In her deposition, Schneider stated that she did not recall any discussions with Chavez and his wife, but she did not think that she spoke with them. She subsequently stated that Chavez could have asked her how she was and that she probably told him that she was "okay" at the time. At trial, she testified that she did not remember talking to Chavez or his wife, but could not imagine not having spoken to them. She also remembered telling the investigating police officer that she thought she was fine and that she was just a little shaken up.

In her deposition, Schneider testified that she did not ask for medical treatment at the scene and did not recall whether any treatment was offered to her. She remembered that Chavez and his wife were taken from the scene of the accident by ambulance. Schneider stated that she was too shaken up to drive herself, so she was driven home by her sister. At home, she rested for the remainder of the day and recalled that she felt cold and was trembling.

Chavez testified that Schneider's car was not pushed into the intersection, that her car was stopped at the time of impact, and that he was traveling at less than 15 miles per hour at the time of the collision. He agreed with the police officer's rendition of where the vehicles ended after the collision, showing Schneider's vehicle a few feet over the crosswalk and Chavez' vehicle straight and touching bumpers with Schneider's vehicle. Chavez stated that he spoke to Schneider to ask her if she was "okay" and that she indicated that she was fine. He stated that Schneider was not bleeding and that the paramedics examined her.

Schneider allegedly suffered a "closed head, mild traumatic brain injury and a cervical and lumbar strain" from the accident. At the trial, Schneider testified that she currently had severe headaches two to three times per month and that she used to experience them one to two times per week following the accident. She testified that she could no longer help her husband in his construction business, mow the lawn, complete many household chores, lift her grandchild, dance, bowl, or engage in many activities that she used to participate in before the accident. She had difficulty in traveling due to her neck pain, although she had traveled to Dallas by plane and by car since the time of the accident. Schneider's husband, a siding and window contractor, testified at trial that he used to travel a lot when he worked, but now he stays closer to home so he can help Schneider around the home. Due to her alleged memory and cognitive problems, she cannot take telephone messages for her husband, no longer plays much bingo, and has difficulty remembering things such as numbers, money, events, names, and telephone numbers. The course of treatment for Schneider's alleged injuries has been as follows:

Within a few days of the accident, Schneider sought medical attention for pain in her neck and lower back and for headaches. Shortly after the accident, Schneider began seeing a chiropractor in Mitchell, Nebraska, Thomas Tomoi. The intake forms from Tomoi's office indicate that she had previously seen a chiropractor in Colorado, although in her deposition and at trial, she stated that she had never seen another chiropractor for treatment. The intake forms also indicate that she had pain in her neck and upper back, that she had been "Waking up w/Hot

Flashes since Mon.," and that she was dizzy after the accident. The intake forms further indicate that she had never had the following symptoms: dizziness, fainting, forgetfulness, confusion, or depression. Also marked on the form is the fact that she had previously had headaches, although at trial, she indicated that these were not the same kind of debilitating headaches that she experienced after the accident.

Tomoi testified by deposition that his diagnosis was an "acute traumatic sprain/strain complex of the cervical thoracic spine, as well as the right glenohumeral articulation with accompanying headaches." Tomoi treated Schneider's neck for approximately 1 year until July 1995, testifying that in the first year of treatment, the frequency of treatment diminished and that Schneider made progress.

Tomoi did not see Schneider again until February 1999. He testified at the time of his deposition on August 9, 1999, that Schneider would always need chiropractic care to get relief from her chronic condition. Tomoi stated that Schneider's symptoms had improved since treatment resumed in February 1999 and that she had fewer headaches, had less pain in her shoulders, and was making slow favorable progress on her range of motion. He also indicated that in June 1994, Schneider's symptoms were "right sided," while in February 1999, they were "left sided," but was of the opinion that her symptoms were still causally related to the June 1994 accident.

Tomoi testified that Schneider never complained of memory or cognitive problems until after February 1999, over 4 years after the accident. In Schneider's deposition, she testified that she told Tomoi within 1 month of the accident. At trial, Schneider testified that she remembered telling Tomoi about her memory problem, but did not recall when she told Tomoi.

Schneider was involved in a second auto accident on December 24, 1994, in which her husband was driving and she was a passenger. She did not seek medical attention specifically for this accident as she was already in treatment with Tomoi at the time. Tomoi testified at trial that Schneider did not seem worse after this second accident.

Schneider went to see Dr. Robert Johnson at the Orthopaedic Center of the Rockies in Fort Collins, Colorado, for a second

opinion regarding her neck pain. The billing statement from Robert Johnson's office indicates that Schneider saw him several times between July 1994 and March 1996. In Schneider's deposition, she testified that she complained to Robert Johnson of extreme headaches and right shoulder and neck pain. Schneider indicated that Robert Johnson took x rays, performed an MRI, and diagnosed a sprained neck. At trial, Schneider stated that the MRI taken by Robert Johnson apparently did not reveal any objective findings. Robert Johnson did not testify either in person or by deposition.

Schneider underwent a round of physical therapy with Scottsbluff Physical Therapy Associates in Scottsbluff, Nebraska, from July to November 1995 upon referral from Robert Johnson. She indicated that she exercised at home for about 5 to 6 months after completing this first round of physical therapy.

Schneider did not receive any treatment for her injuries from March 1996 to November 1998. Schneider states in her deposition that in the 2½-year break, she was still having pain, but was convinced that she was going to get better. Schneider next saw Dr. Brent Peterson, a neurosurgeon in Scottsbluff, for her neck pain on November 11, 1998, with a followup visit on December 9. Peterson testified that Schneider indicated to him that she had an exacerbation of her neck pain approximately 2 or 2½ years prior to the November 11 visit, although she did not give him any specifics as to what activity caused the exacerbation. In Schneider's deposition, she stated that she did not remember giving him this history.

Peterson performed a neurologic exam, focusing on Schneider's cervical spine and cervical muscles. He observed her display difficulty in turning her head during the exam, but during the history portion of the exam, he observed her able to move her neck in all directions with little discomfort. He concluded that her statements regarding the range of motion in her neck were not accurate and that, perhaps, her symptoms were exaggerated. Peterson had Schneider undergo an MRI, which again revealed no objective findings. Peterson's initial impression after the first visit was that Schneider had a "cervical strain and sprain." Peterson subsequently diagnosed myofascial pain.

Palpation of Schneider's neck and shoulders revealed a muscle spasm, but Peterson testified that he simply had no way to know, and was actually doubtful, whether the muscle spasm that he found related to the accident. He testified that he did not doubt that Schneider was in pain.

At trial, Schneider stated that she did not tell Peterson about her memory problems in November 1998 as she felt she was there to see him regarding her neck injury. This is confirmed by Peterson, who indicated that in Schneider's history, she did not report any memory or cognitive problems. Peterson recommended physical therapy for her neck and, after the followup visit, recommended that she continue to see a chiropractor.

Schneider was referred to physical therapy with Henri Prieels in Gering by Peterson. Schneider first completed physical therapy with Prieels from November to December 1998. After December, Schneider took a 2-month hiatus from physical therapy, but was subsequently returned to physical therapy for another 2½ to 3 months with Prieels upon the referral of one of her family doctors.

Prieels testified at trial that Schneider had range of motion limitations, a joint problem, and muscle tightness mainly on the left side of her neck. Prieels indicated that over the course of treatment, her arm symptoms improved, her headaches and upper extremity symptoms were reduced to only occasional occurrences, and she made good progress on range of motion. He stated that he last saw her on June 3, 1999, and that at that time, he recommended to her a home exercise program. He stated that Schneider's full range of motion did not return but that he did not detect any magnification of her symptoms.

About 3 years after the accident, on March 5, 1997, Schneider saw Dr. Allen Brandon, a neuropsychologist in Fort Collins, upon referral of her attorney. Brandon conducted various tests and diagnosed a mild traumatic brain injury, which he attributed to the June 19, 1994, accident, based on the testing and on the history Schneider gave that her memory and cognitive problems started soon after the accident. Brandon stated that he used a validity scale in his testing so that scores cannot be manipulated and that Schneider's validity scales were within normal range, indicating no attempt to falsify or exaggerate. He further stated

that if anything, Schneider tended to smooth things over, rather than exaggerate. Brandon had not spoken to any of Schneider's other doctors and did not have medical records from her other doctors at the March 5, 1997, evaluation.

At trial, Schneider testified that she did not recall telling Brandon that her memory problems arose shortly after the accident. Brandon testified that the history Schneider gave was that she noticed the memory problems shortly after the accident and that this close proximity in time was one of the reasons for his diagnosis. Brandon testified that if the history was not accurate, and the symptoms did not arise until several years afterward, then the accident may not have been the cause of the memory and cognitive problems. He stated that it would be unusual with that kind of injury for the problems to arise several years after the accident, although sometimes, people would not identify the problem immediately. He testified that these conditions tend to improve with the steepest improvement during the first 10 months after an injury. After the March 1997 visit, Brandon recommended that Schneider see a specialist to rule out any other etiology of her difficulties, seek neuromuscular massage for headache treatment, seek cognitive rehabilitation to help with cuing and memory prompting, and obtain previous academic records and intellectual testing to ascertain pretrauma functioning. Schneider did not follow up on any of Brandon's treatment recommendations.

Chavez had Schneider examined by Dr. Tracy Johnson, a physiatrist in Thornton, Colorado, for an examination pursuant to Neb. Ct. R. of Discovery 35 (rev. 1996) on July 19, 1999, just prior to the trial on August 13. A physiatrist is a medical doctor specializing in the diagnosis and treatment of disease and injury by physical methods, including manipulation, massage, exercise, heat, and water. Tracy Johnson testified that Schneider told her that Schneider had an almost immediate onset of neck pain and headaches, but that her memory and cognitive problems started several years after the initial injury. At trial, Schneider testified that she remembered telling Tracy Johnson that there was a problem with Schneider's memory, but did not remember telling Tracy Johnson that it started several years after the accident. Tracy Johnson stated that Schneider had no difficulty relat-

ing the specifics of the accident and that Schneider did indicate that she was dizzy after the accident. Tracy Johnson testified that she did not doubt that Schneider was in pain, that Schneider cooperated in the examination, and that Schneider did not exaggerate in any way. Tracy Johnson stated that she did not feel that Schneider could turn her head to the right and left or flex her neck as one would expect. In the physical examination, Tracy Johnson noted some pain over the trapezius muscles, which extend from the shoulder to the head and across the shoulder blades, that corresponded to the history that Schneider had given.

Tracy Johnson did not perform any x rays or MRI's, but she noted from those in Schneider's medical records that there were not sufficient findings to explain Schneider's condition. Tracy Johnson concluded, given the stated history of cognitive problems arising several years after the accident and based on Brandon's report, that there was no mild traumatic brain injury. She acknowledged that she had no neuropsychological training. Tracy Johnson diagnosed a myofascial condition, although she found no objective findings to explain it. She attributed Schneider's headaches, neck pain, and lower back pain to the June 19, 1994, accident and testified that Schneider's problems were chronic and permanent.

Schneider filed a motion for summary judgment on the issue of liability, which was heard by the court on April 16, 1999. Both Schneider's and Chavez' depositions were offered into evidence. In its journal entry of April 16, the court found that the pleadings and depositions on file showed that there was no genuine issue as to any material fact and that Schneider was entitled to judgment as a matter of law on the issue of liability.

During the course of the trial, the parties stipulated the following as to Schneider's medical expenses:

"'Comes now the plaintiff and defendant through their respective attorneys and stipulate that plaintiff incurred medical bills of $7,691.58, as a result of the accident and injury of June 19, 1994. The parties further stipulate that if the billing personnel for the various providers were called to testify, they would each testify that the bills are fair and reasonable.'"

Testimony was adduced from Schneider, and each bill was reviewed and offered into evidence separately without objection from Chavez.

Schneider moved for a directed verdict at the close of the trial. The basis for her motion included the stipulation that she had incurred medical expenses as a result of the accident, arguing that with the stipulation, it was improper for the court to receive a verdict that was less than the expenses that had been stipulated. She also argued that there was no evidence to controvert that she incurred the expenses as a result of the accident. Chavez argued that the stipulation discussed the fairness and reasonableness of the bills, not whether they were necessary. Chavez also argued that there were issues of Schneider's credibility as to both injuries. In ruling against Schneider, the court indicated that the evidence that Schneider had told a number of people at the time of the collision that she was not injured, and Peterson's testimony of his opinion of Schneider's "aggravating system [sic]," would allow the jury to find that the medical expenses in evidence were not reasonably needed by Schneider and would justify the jury returning a $0 verdict.

At the jury instruction conference, Schneider objected to the portion of instruction No. 2 allowing the jury to find that " '[t]he plaintiff has not met her burden [of proof] and fix her damages at zero,' " arguing that she should have received a directed verdict. Schneider's objection was overruled, and the jury was instructed as follows regarding burden of proof:

> The court has determined as a matter of law that the defendant was negligent, that the plaintiff was free of any negligence, and that the negligence of the defendant was the proximate cause of the accident. You are accordingly directed to return a verdict in favor of the plaintiff and against the defendant in the amount of damages you determine in accordance with jury instruction number 3.
>
> Before the plaintiff can recover against the defendant, plaintiff must prove, by the greater weight of the evidence, each of the following:
>
> 1. That the collision was a proximate cause of some damage to the Plaintiff; and
> 2. The nature and extent of the damage.

Jury instruction No. 2 further included the following, regarding the effect of the jury's findings:

> If you find that plaintiff has not met her burden of proof, then you must fix her damages at zero on the verdict form provided.
>
> On the other hand, if you find that plaintiff has met her burden of proof then you must decide how much money will fairly compensate the plaintiff for her injury as described in jury instruction number 3. Once you do that, you must also fill in the amounts on the verdict form provided.

The case was submitted to the jury on August 16, 1999, at 10:10 a.m. At approximately 10:40 a.m. on August 16, the jury returned a verdict that Schneider had not met her burden of proof and fixed her damages at $0. Subsequently, on August 20, Schneider filed a motion for new trial on the grounds that the verdict was not sustained by sufficient evidence and/or was contrary to law. At the hearing on August 31, the court overruled Schneider's motion, finding that there was evidence by which the jury could conclude that Schneider was not hurt or was making up symptoms, justifying the jury's verdict. The court based its finding upon Schneider's statements made at the time of the accident that she was not hurt, as well as the testimony of Peterson indicating that perhaps she was exaggerating her symptoms. The court entered judgment on the jury verdict on September 1, finding that Schneider had not met her burden of proof and setting her damages at zero.

### III. ASSIGNMENTS OF ERROR

Schneider asserts that the district court erred in (1) failing to direct a verdict in Schneider's favor at the close of evidence given the nature of the evidence and the stipulation between the parties, particularly as to Schneider's cervical injury which was not controverted; (2) including on the verdict form that the jury could find that Schneider had not met her burden of proof; and (3) failing to grant Schneider's motion for new trial in light of the appellate holdings in the cases of *Storjohn v. Fay*, 246 Neb. 454, 519 N.W.2d 521 (1994); *O'Neil v. Behrendt*, 212 Neb. 372, 322 N.W.2d 790 (1982); and *Dowd v. Conroy*, 1 Neb. App. 230, 491 N.W.2d 375 (1992).

## IV. STANDARD OF REVIEW

A jury verdict may not be set aside unless clearly wrong, and it is sufficient if there is any evidence presented to the jury upon which it could find for the successful party. *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989); *Dowd v. Conroy, supra.*

A verdict will not be set aside as inadequate unless so clearly against the weight and reasonableness of the evidence and so disproportionate to the injury proved as to indicate that the verdict was the result of passion, prejudice, mistake, or some other means not apparent in the record, or that the jury disregarded the evidence or rules of law. *Bashus v. Turner*, 218 Neb. 17, 352 N.W.2d 161 (1984); *Dowd v. Conroy, supra.*

A directed verdict is proper at the close of all the evidence only where reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. In reviewing the action of a trial court, an appellate court must treat a motion for a directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Corcoran v. Lovercheck*, 256 Neb. 936, 594 N.W.2d 615 (1999); *Haag v. Bongers*, 256 Neb. 170, 589 N.W.2d 318 (1999).

To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the appellant was prejudiced by the court's refusal to give the tendered instruction, (2) the tendered instruction is a correct statement of the law, and (3) the tendered instruction is warranted by the evidence. *Hausman v. Cowen*, 257 Neb. 852, 601 N.W.2d 547 (1999); *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998). In reviewing a claim of prejudice from instructions given or refused, the instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence, there is no prejudicial error

necessitating reversal. *Hausman v. Cowen, supra*; *Cobb v. Sure Crop Chem. Co.*, 255 Neb. 625, 587 N.W.2d 355 (1998).

On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower courts. *Hausman v. Cowen, supra*; *Gallner v. Gallner*, 257 Neb. 158, 595 N.W.2d 904 (1999).

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of discretion. A motion for new trial is to be granted only when error prejudicial to the rights of the unsuccessful party has occurred. *Hausman v. Cowen, supra*; *Phillips v. Industrial Machine*, 257 Neb. 256, 597 N.W.2d 377 (1999).

The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved. *Hausman v. Cowen, supra*; *Jones v. Meyer*, 256 Neb. 947, 594 N.W.2d 610 (1999).

## V. DISCUSSION

### 1. MOTION FOR DIRECTED VERDICT

For Schneider's first assignment of error, she asserts that the district court erred in failing to direct a verdict in her favor at the close of evidence given the stipulation between the parties and the nature of the evidence, particularly as to Schneider's cervical injury which she claims was not controverted.

### (a) Uncontroverted Cervical Injury

While Schneider concedes in her brief that her alleged brain injury was controverted, she argues all of the medical evidence, including the testimony of Chavez' independent expert, confirms that she suffered a cervical strain as a result of the accident. Schneider therefore asserts that she should have been granted a partial directed verdict.

In its ruling on the motion for directed verdict, the district court pointed to Schneider's statements made at the time of the accident, as well as to Peterson's report of Schneider's "aggravating system [sic]," as facts that could allow the jury to find that Schneider's expenses were not reasonably necessary.

Additional evidence that could lead reasonable minds to differ as to the existence or extent of Schneider's neck injury includes Peterson's testimony indicating possible exaggeration of Schneider's symptoms, Peterson's testimony questioning whether the muscle spasm that he found related to the accident, the 2½-year gap in treatment, the differences between Schneider's and Chavez' testimony as to the force of the collision, and the lack of objective findings in the various x rays and MRI's to explain her condition. Also, although there is no evidence to suggest that these were direct causes of Schneider's injury, there was evidence of a subsequent accident and evidence that Schneider may have seen a chiropractor prior to June 19, 1994, both of which could certainly factor into the jury's evaluation of Schneider's credibility. We disagree with Schneider's contention that the evidence surrounding her cervical injury was uncontroverted and find that the evidence regarding both of her alleged injuries was in conflict to the extent that a reasonable mind could not draw but one conclusion from the evidence. It is for the jury, as trier of fact, to resolve conflicts in the evidence and to determine the weight and credibility to be given to the testimony of witnesses. *Jones v. Meyer, supra.* Triers of fact are not required to take the opinions of experts as binding upon them. *Id.* Determining the weight that should be given expert testimony is uniquely the province of the fact finder. *Id.*

### (b) Effect of Stipulation

Schneider next argues that the stipulation regarding medical expenses automatically entitled her to a directed verdict on her damages. Schneider concedes, however, that the extent of her injury and the amount of her damages are to be determined by the jury. In essence, Schneider asserts that because of the stipulation, the court should have directed the jury to find that she was damaged and instructed it to determine the monetary amount. Schneider refers to the case *O'Neil v. Behrendt*, 212 Neb. 372, 322 N.W.2d 790 (1982), which held that a jury verdict of $1,000 was inadequate where special damages for medical expenses were stipulated in the amount of $1,641.18. The court stated that the stipulation in that case as to damages was no more binding on the jury than if the witnesses had actually been

called, qualified as experts, and testified in person. However, because the court found that the evidence regarding damages was undisputed, the stipulation could be considered in determining whether or not the verdict was inadequate. *Id.* The court also noted that the verdict "smack[ed] of a compromise" and that perhaps the jury felt sorry for the defendant and placed some unwarranted blame for the host driver's negligence onto the plaintiff passenger. *Id.* at 378, 322 N.W.2d at 793. The present case is unlike the situation in *O'Neil*, as the jury actually found that Schneider had not proved her claims, the damages evidence was not undisputed, and there is nothing about the jury verdict to suggest that it was striking a compromise.

This treatment of the stipulation as simply another piece of evidence to be considered by the jury is similar to the way Nebraska courts have treated extrajudicial or "simple" admissions as opposed to judicial admissions. The difference between judicial admissions and simple admissions was explained in *Kipf v. Bitner*, 150 Neb. 155, 33 N.W.2d 518 (1948), wherein the court noted that "admissions" in the law of evidence are concessions or voluntary acknowledgment made by a party of the existence of certain facts and that they are ordinarily classified as judicial and extrajudicial. *Id.* at 164, 33 N.W.2d at 523. A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true. *Jorgensen v. State Nat. Bank & Trust*, 255 Neb. 241, 583 N.W.2d 331 (1998); *Kipf v. Bitner, supra; Nichols Media Consultants v. Ken Morehead Inv. Co.*, 1 Neb. App. 220, 491 N.W.2d 368 (1992). An extrajudicial admission is simply an item of evidence in the mass of evidence adduced during a trial, admissible in contradiction and impeachment of the present claim and other evidence of the party making the admission. *Kipf v. Bitner, supra.* A judicial admission is ordinarily final and conclusive upon the party by whom it was made, unless the trial court, in the exercise of judicial discretion, timely relieves the party from that consequence. *Id.* An extrajudicial admission is not ordinarily final and conclusive upon the party by whom it was made, in the absence of controlling elements of estoppel. *Id.* Similarly, a stipulation is

"no more binding on the jury than if the witnesses had actually been called, qualified as experts, and testified in person." *O'Neil v. Behrendt*, 212 Neb. at 377, 322 N.W.2d at 793.

Other Nebraska cases have analyzed the effect of stipulations regarding damages in relationship to allegedly inadequate verdicts. In *Reiser v. Coburn*, 255 Neb. 655, 587 N.W.2d 336 (1998), a wrongful death case following an auto accident, the jury verdict of $17,000 was reduced to $8,517, according to the 49.9 percent negligence of the deceased. The parties' stipulation that $33,747.72 in medical expenses was incurred as a result of the accident was incorporated into the jury instructions. The court reiterated that the jury was not bound by the parties' stipulation, but the fact that stipulated expenses were undisputed could be considered in determining the adequacy of the verdict. The court concluded that where the jury awarded a verdict of approximately 50 percent of the stipulated damages, there was no logical correlation between the stipulated and uncontroverted evidence regarding medical expenses, making the verdict inadequate as a matter of law.

*Bohn v. Kruger*, 185 Neb. 407, 176 N.W.2d 14 (1970), was another case where the jury awarded a verdict which the court found to be inadequate. In *Bohn*, the plaintiff's original injuries were undisputed, and the verdict was slightly less than the amount of the plaintiff's stipulated special damages. The court stated that it was apparent the jury had disregarded the court's instructions and the uncontroverted evidence, and had not awarded damages for pain, suffering, or permanent injury, making the verdict grossly inadequate under the facts of the case.

Similarly, in *Murrish v. Burkey*, 1 Neb. App. 650, 510 N.W.2d 366 (1993), which relied on *O'Neil v. Behrendt*, 212 Neb. 372, 322 N.W.2d 790 (1982), the court found a verdict in the amount of the stipulated hospital expenses to be inadequate in light of other stipulated damages for physicians' fees, concluding that it was not possible to find the defendant was liable for the plaintiff's injury, but not liable for the related undisputed medical expenses. There was no question of proximate cause of the injuries in *Murrish*.

For purposes of this assignment of error, none of the foregoing cases stand for the proposition that a stipulation regarding

medical expenses entitles a plaintiff to a directed verdict on damages. Accordingly, we find that the district court did not err in denying Schneider's motion for directed verdict.

## 2. JURY INSTRUCTIONS

Schneider's second assignment of error is that the district court erred in including on the verdict form the option that the jury could find that Schneider had not met her burden of proof and fix her damages at $0. Initially, Schneider notes in her brief that her primary complaint regarding this jury instruction centers upon the fact that she believes she was entitled to a directed verdict, arguing that if the court should have given her a directed verdict, then it was error for the court to give the instruction regarding her not meeting her burden of proof. We have addressed this argument in the preceding section.

Schneider next argues that the correct statement should be whether a party has met the burden of persuasion and states that this is something different from the burden of proof. Schneider's contention is not entirely correct. Actually, the burden of persuasion is a part of the burden of proof, as is the burden of production. The burden of production is the legal standard which must be met before a case is submitted for jury consideration. The burden of proof is defined as follows in 29 Am. Jur. 2d *Evidence* § 155 (1994):

The term burden of proof has been used to describe two related but distinct concepts: the burden of production and the burden of persuasion.

To satisfy the burden of production is also sometimes referred to as making out a prima facie case; and the term is sometimes used in legislation for this purpose. Thus, proof of the underlying fact is enough to survive a motion for a directed verdict.

Whether a party has satisfied its burden of production is not an issue of fact for the jury; it is an issue of law. It arises when, after a party rests, an opposing counsel brings a motion for a directed verdict or the like.

The burden of persuasion aspect of the burden of proof describes the obligation of a party to introduce evidence that persuades the factfinder, to a requisite degree of belief, that a particular proposition of fact is true.

The burden of persuasion has two components; first, the facts a party must plead and prove in order to prevail on a particular issue, and second, how persuasively it must prove those facts.

The court was correct in giving this instruction, as it is an accurate statement of law and since the facts of this case were sufficiently controverted such that the jury could decide that she had not met the "persuasion aspect" of her burden of proof. Accordingly, Schneider's second assignment of error is without merit.

### 3. MOTION FOR NEW TRIAL

Schneider's third and final assignment of error is that the district court erred in failing to grant her motion for new trial in light of the appellate holdings in the cases *Storjohn v. Fay*, 246 Neb. 454, 519 N.W.2d 521 (1994); *O'Neil v. Behrendt*, 212 Neb. 372, 322 N.W.2d 790 (1982); and *Dowd v. Conroy*, 1 Neb. App. 230, 491 N.W.2d 375 (1992).

To the extent that Schneider's argument on her motion for new trial is that the verdict was inadequate given the stipulation and alleged uncontroverted medical evidence, we find that the cases of *Reiser, O'Neil, Bohn,* and *Murrish,* discussed above, are distinguishable from the present case. Obviously, in all four cases, a verdict was rendered in favor of the plaintiff on the issue of damages, with the jury thereby finding that the plaintiff had met his or her burden of proof. The jury in the present case found that Schneider did not meet her burden and awarded no damages. Further, the medical expenses and condition of the plaintiff were undisputed in the four previously mentioned cases, unlike in the present case.

In *Dowd v. Conroy, supra,* cited by Schneider in support of this assignment of error, the medical condition of the plaintiff and proximate causation were disputed. In *Dowd,* the defendant admitted liability in a collision between the plaintiff's automobile and the defendant's truck. The trial court refused to enter a directed verdict as to medical expenses, and the jury entered a verdict for the defendant. In affirming the verdict, the court stated: "Generally, where there is a conflict concerning the extent to which a plaintiff's complaints were caused by injuries

suffered at the time of a collision, the question is ordinarily for the jury under proper instructions." *Id.* at 239, 491 N.W.2d at 381. Additionally, in *Dowd*, there was a conflict in the testimony as to whether the injuries suffered were proximately caused by the accident or whether the injuries preexisted the accident. The court went on to conclude: "The testimony in this case simply does not warrant a directed verdict for Dowd on his medical expenses and lost wages. The facts surrounding Dowd's injury are subject to multiple explanations, such that a reasonable mind cannot draw but one inference from them." *Id.* at 235, 491 N.W.2d at 378.

Based upon the reasoning in *Dowd*, since reasonable minds could draw more than one conclusion from the evidence regarding Schneider's alleged injuries, it was not error to overrule Schneider's motion for directed verdict, nor was it error for the district court to overrule her motion for new trial.

It is not apparent from her brief why Schneider also cites *Storjohn v. Fay, supra*, in support of her contention that the district court erred in not granting her motion for new trial. *Storjohn*, an appeal regarding an auto accident with a defendant subject to epileptic seizures, involved issues of unavoidable accident and loss of consciousness as an affirmative defense. The issues in *Storjohn* are not applicable to the analysis of the present case.

We find, in light of the disputed evidence surrounding both of Schneider's alleged injuries, that the jury could reasonably find that she had not met her burden of proof. Accordingly, there was no prejudicial error in the court not granting Schneider's motion for new trial.

## VI. CONCLUSION

We affirm the decision of the district court denying Schneider's motion for directed verdict, entering judgment in conformity with the jury verdict, and denying Schneider's motion for new trial.

AFFIRMED.